Dennis D. NOWELS, Appellant–Petitioner,

v.

Cathleen Cay NOWELS, Appellee–Respondent.

No. 57A04–0502–CV–98.

Court of Appeals of Indiana.

Nov. 3, 2005.

Kendra Gowdy Gjerdingen, Mallor Clendening Grodner & Bohrer LLP, Bloomington, IN, Sherie L. Hampshire, Hampshire & Associates, P.C., Fort Wayne, IN, Attorneys for Appellant.

Latriealle Wheat, Angola, IN, Daniel F. Diggins, Kendallville, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

The marriage of Appellant–Petitioner Dennis D. Nowels ("Dennis") and Appellee–Respondent Cathleen Cay Nowels ("Cathleen") was dissolved on February 7, 2005. Dennis now appeals the division of marital property and child support order. We affirm.

### Issues

Dennis presents five issues for our review, which we consolidate and restate as the following four issues:

I. Whether the trial court's valuation of Wible Lumber, Inc. is clearly erroneous;

II. Whether the allocation of more than fifty percent of the marital estate to Cathleen is clearly erroneous;

III. Whether the trial court's determination of Cathleen's child support obligation is clearly erroneous; and

IV. Whether the order that Dennis pay such joint tax liabilities as may exist for 2004 is clearly erroneous.

### Facts and Procedural History

Dennis and Cathleen were married on August 16, 1981 and separated on May 23, 2003. On June 10, 2003, Cathleen filed a petition for legal separation and request for provisional orders. On June 30, 2003, Dennis petitioned to dissolve the marriage.

On October 10, 2003, the trial court approved the parties' agreement concerning custody and parenting time with respect to their children. The parties' eldest daughter was emancipated, and Dennis was awarded the physical custody of the two minor children. On April 26, 2004, the trial court entered a provisional order providing in pertinent part that Dennis pay the sum of $1,952.00 per week as spousal maintenance to Cathleen, who suffers from muscular dystrophy.

The trial court conducted a final hearing on October 9 and 10, 2004. On February 7, 2005, the trial court entered its findings of fact, conclusions of law and order dissolving the marriage and dividing the marital estate. The trial court also ordered

Dennis to pay maintenance to Cathleen in the amount of $2,000.00 per month. Dennis now appeals.[1]

### Discussion and Decision

#### I. Valuation of Wible Lumber

##### A. Standard of Review— Property Division

The distribution of marital property is committed to the sound discretion of the trial court. *Breeden v. Breeden,* 678 N.E.2d 423, 427 (Ind.Ct.App.1997). However, Indiana Code Section 31–15–7–5 creates a rebuttable presumption that an equal division of the marital property of the parties is just and reasonable. *Akers v. Akers,* 729 N.E.2d 1029, 1033 (Ind.Ct.App.2000). A party who challenges the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute. *In re Marriage of Bartley,* 712 N.E.2d 537, 542 (Ind.Ct.App. 1999).

When, as here, the trial court finds the facts specially and states its conclusions thereon pursuant to Ind. Trial Rule 52, the court on appeal shall not set aside the findings or judgment unless clearly erroneous. *State Farm Mut. Auto. Ins. Co. v. Leybman,* 777 N.E.2d 763, 765 (Ind.Ct.App.2002), *trans. denied.* We review the judgment by determining, first, whether the evidence supports the findings and, second, whether the findings support the judgment. *Evans v. Med. and Prof'l Collection Services, Inc.,* 741 N.E.2d 795, 797 (Ind.Ct.App.2001). We consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we neither reweigh the evidence nor assess witness credibility. *Id.* However, appellate courts owe no deference to trial court determinations deemed questions of law. *GKN Co. v. Magness,* 744 N.E.2d 397, 401 (Ind.2001).

##### B. Analysis

Dennis challenges the trial court's valuation of Wible Lumber, Inc. ("Wible Lumber"), a business owned and operated by Cathleen's parents for many years, and subsequently sold to Dennis and to Cathleen's brother, David Wible ("David"). Wible Lumber is organized as a sub-chapter S corporation, with Dennis and David each having fifty-percent ownership. At the final hearing, Dennis presented the expert testimony of Jean Tipton, CPA ("Tipton"), who valued Dennis's one-half interest in Wible Lumber at $818,000.00 as of June 30, 2003, while Cathleen presented the expert testimony of Professor Wilbur Lewellen ("Professor Lewellen"), who valued Dennis's one-half interest at $3,550,000.00, as of September 2003.[2] The trial court found Dennis's one-half interest to be $2,500,000.00, as of the date of the final hearing. Dennis challenges that valuation as arbitrary and unsupported by the evidence. More specifically, he claims that no expert valued his interest in Wible Lumber as of the final hearing date and that the trial court should have adopted Tipton's opinion because she offered the sole opinion of the fair market value of his individual shares.

---

1. Dennis filed a bankruptcy petition in the United States Bankruptcy Court for the Northern District of Indiana and, on May 4, 2005, the bankruptcy court modified the automatic stay to facilitate Dennis's pursuit of the instant appeal.

2. More specifically, Professor Lewellen compiled an appraisal of Wible Lumber as an entity, valued the entire net equity at $7,100,000.00, and opined that Dennis's shares were worth one-half the total net equity, with no reduction for the fact that his interest was a non-controlling interest.

 The marital estate is to be closed at the time of the filing of the petition for dissolution. *Sanjari v. Sanjari,* 755 N.E.2d 1186, 1192 (Ind.Ct.App. 2001). However, a trial court has broad discretion in determining the date upon which to value marital assets, and may select any date between the date of filing the petition for dissolution and the date of the final hearing. *Wilson v. Wilson,* 732 N.E.2d 841, 845 (Ind.Ct.App.2000), *trans. denied.* Additionally, a trial court has broad discretion in ascertaining the value of property in a dissolution action, and its valuation will not be disturbed absent an abuse of that discretion. *Reese v. Reese,* 671 N.E.2d 187, 191 (Ind.Ct.App.1996), *trans. denied.* The trial court has not abused its discretion if its decision is supported by sufficient evidence and reasonable inferences therefrom. *Id.* Even where the circumstances would support a different award, we do not substitute our judgment for that of the trial court. *DeHaan v. DeHaan,* 572 N.E.2d 1315, 1325 (Ind.Ct.App.1991), *trans. denied.*

 Here, the trial court made extensive findings of fact concerning the financial condition of Wible Lumber, Findings 58 through 88, which we paraphrase as follows. The trial court found that: Dennis and David handled entirely different aspects of the business, without cross-training or planning for a successor and thus Wible Lumber lacked "depth of management"; each was critical to continued success of the business; shares of Wible Lumber, as a closely-held corporation, lacked marketability; Dennis had executed promissory notes to pay for his purchase of stock; Wible Lumber owed debts personally guaranteed by Dennis and David; significant corporate action requires 100%

shareholder agreement; assets central to Wible Lumber's operations are situated on land leased from Martha Wible and the lease continues until July 1, 2083; Wible Lumber is required to lease necessary assets from Wible Drying; if Wible Lumber were denied access to leased land or Wible Drying assets, approximately five million dollars would be needed for relocation; other hardwood lumber competitors provide the same products in close geographical proximity to Wible Drying; Wible Lumber experienced unprecedented revenue growth since 2001 due to increased consumer interest in recreational vehicles; the growth trend would reasonably be expected to "level off"; Wible Lumber was soon to lose one of its top customers; another customer was considered "at risk"; Wible Lumber is a capital intensive business; Wible Lumber has demonstrated prosperity over many years; and Wible Lumber operated at "20% over capacity."[3] (App. 15–21.)

The trial court valued Dennis' interest in Wible Lumber at $2,500,000.00, explaining as follows:

90. In light of [Wible Lumber]'s consistent profitability over many years and its record profitability and growth in the last few years, in the Court's opinion, Ms. Tipton's valuation of [Wible Lumber] is completely unrealistic. The Court believes Mr. Nowels' ½ interest in this highly profitable and dynamic company is worth considerably more than $818,000.00.

91. Tipton's valuation considered the income approach, capitalized cash flow method, and the market approach, industry comparables method, giving the former method

───────

**3.** David testified that Wible Lumber was operating "over capacity" when overtime work was required. (Tr. 312.)

60% weight and the latter method 40% weight. . . .

92. Lewellen's valuation considered only the income approach, capital asset pricing model (hereinafter CAPM).

93. Lewellen neither conducted a site visit to [Wible Lumber] nor did he talk with Mr. Nowels or David Wible regarding the industry, [Wible Lumber]'s operation, the impact of the leases, [Wible Lumber]'s competition, the geographical area of sales, or other specific company issues which might have an effect on the value of Mr. Nowels' 50% interest in [Wible Lumber]. Such an approach to the valuation process is generally recommended by recognized business valuation experts.

94. Lewellen reviewed financial data provided by Mrs. Nowels' attorney, but he did not review, and may not have been aware of the existence of, the various stock purchase agreements, Key Man life insurance, and/or the Shareholder's Agreement until the time of trial. He was apparently aware of the existence of lease issues involving [Wible Lumber] and Martha Wible, and [Wible Lumber] and [Wible Drying], but did not know or was not made aware of the effect of such leases on [Wible Lumber] operations or the fact that [Wible Drying] owns significant assets which are instrumental to [Wible Lumber]'s operations. Lewellen acknowledged that a three year lease is not considered [a] long term lease.

95. Lewellen's opinion that Mr. Nowels' 50% interest in [Wible Lumber]

equates to a control position, which renders [Wible Lumber] more valuable to Mr. Nowels since he can block action taken by David Wible is not a supportable or tenable position. It is the fair market value of Mr. Nowels' 50% interest in [Wible Lumber] which is at issue in this case, not the value of [Wible Lumber] as an entity, or the value of [Wible Lumber] to the owners as a going concern.

96. The Court believes that Lewellen's valuation of [Wible Lumber] is too high in light of the fact that he was not aware of all of the relevant facts about the business and that a less than control interest in a closely held family Corporation has diminished marketability, thus reducing the value of a 50% ownership position to less than ½ the value of the entire Corporation.

97. The Court believes that in light of the prior findings, the fair market value of Mr. Nowels' ½ interest in [Wible Lumber] to be $2,500,000.00, as of the date of the final hearing.

(App. 22–23.) Although the trial court declined to adopt either appraisal in its entirety, the valuation is not arbitrary but rather is a well-reasoned resolution of conflicting evidence. Tipton's testimony and appraisal emphasized the risks inherent in a closely held corporation, but her valuation did not include Wible Lumber's most recent and most profitable year. On the other hand, Professor Lewellen rejected most consideration of risk or differences between publicly held and closely held corporations, but emphasized recent profitability and substantial assets.[4] Although

4. Professor Lewellen's appraisal disclosed that Wible Lumber had assets of over $3,800,000.00 (exclusive of good will).

each expert used the "same general approach," and each attempted to arrive at fair market value, the discount rates applied by the experts varied significantly, with Tipton applying a 19% discount rate and Professor Lewellen applying a 12% discount rate. (Tr. 254.)

The trial court was not obligated to adopt the specific valuation date chosen by either appraiser, or the specific value assigned. It is apparent, in light of the trial court's findings of fact, that it considered all facets of the operations of Wible Lumber, not just those aspects emphasized by a single expert. The value placed on Wible Lumber by the trial court was within the bounds of the evidence presented and within the trial court's broad discretion.

## II. Deviation from Presumptive Equal Distribution

■■■ Dennis argues that the trial court's award of 63% of the marital estate to Cathleen must be reversed because (1) Cathleen requested an equal division and (2) Cathleen did not present evidence to support a deviation from the statutorily presumptive equal division.

Indiana Code Section 31–15–7–5 governs the distribution of marital property and provides as follows:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

Accordingly, Indiana Code Section 31–15–7–5 requires the trial court to presume that an equal division of marital property is just and reasonable, absent relevant evidence to rebut the presumption. *Capehart v. Capehart*, 705 N.E.2d 533, 536 (Ind.Ct. App.1999), *trans. denied.*

Here, the trial court explained the deviation as follows:

109. To the extent, if any, that this Decree awards Mrs. Nowels more than ½ of the marital estate, such an unequal award is supported by the facts that she is disabled and cannot work, and that she has high medical and personal care expenses and that Mr. Nowels has an extraordinarily high earning capability.

(App. 25.) The evidentiary record discloses that Cathleen suffers from muscular dystrophy, a progressive nerve disease, and has no expectation that she will be able to acquire employment in the future. She requires around-the-clock assistance because she cannot lift herself or attend to her personal needs. As such, there is ample evidence to support the deviation from an equal division of marital assets. To the extent Dennis suggests that the trial court may not deviate from the statutory presumption absent a specific request by a party, he offers no authority to sup-

port this proposition. He has demonstrated no clear error.

### III. Calculation of Child Support

██ The trial court ordered Cathleen to pay $56.00 per week for the support of the parties' two youngest children. The child support calculation was based upon weekly gross income for Dennis of $9,623.67 and weekly gross income for Cathleen of $1,923.07. Dennis claims that each gross income figure is erroneous; specifically, his gross income is inflated because it includes subchapter S pass-through income from Wible Lumber and Cathleen's income is understated because it does not include maintenance payments she is to receive pursuant to their divorce decree.

██ The trial court's findings and conclusions relevant to gross income available for child support are as follows:

42. Mr. Nowels has been the sole income provider for the family. The 2003 Federal income tax return shows gross income of $639,740.00

43. Mr. Nowels' average gross income for 2001 through 2003 was $399,038 (Exhibit 17). His average gross income for 1998 through 2003 was $333,903 (Exhibit 18). His gross income consists of an annual salary of $104,000 and distributions, which vary from year to year, relating to his 50% ownership of [Wible Lumber].

44. [Wible Lumber] is a Subchapter S Corporation. In tax year 2003, Mr. Nowels was attributed profit income from the Corporation, and was required to pay income tax on this amount. In reality, a portion of this amount was retained by the Corporation and not distributed to Mr. Nowels. This is called "pass through" income. Additionally, the Corporation issued Mr. Nowels a check for $137,200.00 to reimburse him for the income tax he paid on the pass through income. The case of *Tebbe v. Tebbe* 815 N.E.2d 180 (Ind.Ct.App.2004) deals with this issue. On page 184, it holds that, "(1) undisbursed pass-through income of a minority shareholder in an S-corporation should not be included in child support calculations unless the trial court finds that the corporation is being used to shield income and (2) pass-through S-corporation income that is merely disbursed to offset pass-through shareholder tax liability, and which does not increase the shareholder's actual income, should not be included in child support calculations." Although Mr. Nowels is not a minority shareholder of [Wible Lumber], but rather an equal ½ owner of its shares, the Court believes that the rule enunciated in *Tebbe* is applicable here. The Court further notes that there was no evidence that [Wible Lumber] held back profits from distribution to shield those profits.

\* \* \* \* \* \*

108. For child support purposes, the Court attributes to Mrs. Nowels interest income of $1,923.07 per week, and finds Mr. Nowels' 2003 income (less the pass through tax payment of $137,000 [sic][5]) to be $9,623.67 per week.

(App. 12–13.) We review an award of child support for an abuse of discretion. *Tebbe v. Tebbe*, 815 N.E.2d 180, 183 (Ind. Ct.App.2004), *trans. denied.* An abuse of

---

**5.** The tax offset payment may have been $137,200.00, per paragraph 44.

discretion occurs if the court's decision is clearly against the logic and effect of the facts and circumstances before it or if it has misinterpreted the law. *Id.*

Dennis has demonstrated no abuse of discretion in the trial court's exclusion of Cathleen's maintenance income from her gross income for child support purposes. The definition of weekly gross income in Indiana Child Support Guideline 3 provides that gross income includes "alimony or maintenance received from *other marriages.*" (emphasis added). The trial court is not, as a corollary, required to include maintenance ordered as a result of the current marriage. Pursuant to Guideline 1, child support is based upon the premise that children should receive the same portion of parental income that they would have received if the parents and child were living in an intact household. The transfer of income from one parent to another as maintenance because the parent receiving payments is disabled does not increase the total amount of income available for the support of the children. As such, the income attributed to Cathleen for child support purposes is not understated.

We next address whether the income attributed to Dennis for child support purposes is overstated, due to its inclusion of pass-through income from Wible Lumber, a sub-chapter S corporation. In *Tebbe,* a separate panel of this Court held that undisbursed pass-through income of a minority shareholder, as well as pass-through S-corporation income that is merely disbursed to offset pass-through shareholder tax liability, which does not increase the shareholder's actual income, should not be included in child support calculations. 815 N.E.2d at 184.

Here, the trial court apparently intended, consistent with paragraph 44 of the order, to exclude Dennis' pass-through income from Wible Lumber from his gross income available for child support, as Dennis did not enjoy a controlling interest in Wible Lumber such that he could manipulate distributions, nor was there any indication that income was being shielded for child support purposes. Nevertheless, paragraph 108 suggested that the sole deduction from income made by the trial court to arrive at gross income available for child support is that of income disbursed to offset pass-through shareholder tax liability. Thus, a cursory review of the trial court's order would indicate that the findings and conclusions are internally inconsistent, and that pass-through income was inadvertently included in Dennis's gross income.

However, Dennis does not provide calculations and citations to portions of the record that facilitate our discernment of clear error. Petitioner's Exhibit 18, submitted by Dennis at the final hearing, lists 2003 salary of $104,000.00 and distributions of $497,820.00, for a total gross income of $601,820.00 annually ($11,573.00 weekly).[6] There is no amount listed as pass-through income. Moreover, on appeal, although he generically challenges the trial court's calculation of his gross income, Dennis does not offer an alternative calculation specifying the amount of pass-through income included, if any. Finally, to the extent that Dennis suggests that key-man insurance payments and payments to Martha Wible should be treated as pass-through income, he does not cite relevant authority to support this proposition.

6. The trial court found that Dennis' income for child support purposes was $9,623.67 per week ($500,430.00 annually, $637,430.00 less tax offset payment of $137,000.00). In contrast, the trial court found that the total gross income for 2003 federal tax purposes was $639,740.00.

In sum, Dennis has not demonstrated that the trial court's order that Cathleen pay $56.00 weekly as child support is clearly erroneous.

### V. Tax Liability

Finally, Dennis challenges the trial court's order that he pay and hold Cathleen harmless for "2003 joint federal and state income tax liabilities and such liabilities as may exist for 2004." (App. 28.) He contends that there will be no joint tax liabilities for 2004, because he has paid Cathleen tax-deductible maintenance and they filed separate tax returns rather than a joint return. Cathleen does not contest these assertions. It appears that the trial court's language with respect to the tax year 2004 is merely surplusage, in light of the uncontested facts, rather than reversible error.

### Conclusion

The evidence of record supports the findings of the trial court and the findings support the judgment. As such, the challenged property distribution and child support orders are not clearly erroneous.

Affirmed.

SHARPNACK, J., and DARDEN, J., concur.