## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Zachary J. Stock
Zachary J. Stock, Attorney at Law P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Karen A. Wyle
Bloomington, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Greg Rink,

*Appellant-Petitioner,*

v.

Emily Rink,

*Appellee-Respondent*

October 26, 2015

Court of Appeals Case No.
29A02-1503-DR-189

Appeal from the Hamilton
Superior Court

The Honorable Daniel J. Pfleging

Trial Court Cause No.
29D02-1312-DR-011312

**Bailey, Judge.**

# Case Summary

Greg Rink ("Husband") and Emily Rink ("Wife") divorced in 2015. Husband challenges the final order with respect to specific facets of the trial court's division of the property in the marital estate.

We affirm.

# Issues

Husband presents two issues for our review. We restate these as:

I. Whether the trial court erred when it equally divided the estate despite a post-nuptial agreement calling for a refund to Husband of a $150,000 down payment upon sale of a residence; and

II. Whether the trial court erred when it relied upon Wife's testimony to determine the value of a business interest held by Husband.

# Facts and Procedural History

Husband and Wife were married in 2008. Each spouse owned a home prior to the marriage; Husband owned a residence in Pennsylvania, and Wife owned a home in Maryland. Both Husband and Wife had separate investment portfolios. Each worked in pharmaceutical sales. Two children were born to the couple, one in 2008, and one in 2009.

Until 2011, the family lived in Pennsylvania.[1] In 2011, Wife obtained employment in Indiana and relocated. Husband remained out of the state with the children for several months, but eventually Husband obtained employment in Indiana and relocated with the children. Husband sold the Pennsylvania residence, which yielded cash of $150,000. The couple agreed that they would use the proceeds of the sale of that home as a down payment on a home in Indiana ("the Carmel residence"). Husband drafted a written agreement to this effect, which Husband and Wife signed; their signatures were witnessed by an acquaintance of Husband, Todd Hollingsworth ("Hollingsworth"). The agreement provided, in relevant part:

> This letter is being written, and to be recognized as [a] mutually signed and agreed upon official document to the State of Indiana, and/or the Hamilton County Judicial process regarding the down payment and new home purchase [for the Carmel residence] as referenced below.
>
> In the unlikely event that the undersigned husband and wife, [Husband], and [Wife] should separate and/or divorce, that the initial home purchase down payment of $150,000.00 (one hundred and fifty thousand USD) made solely by [Husband] will be refunded and or reallocated to him as a result of the final sale of the home…

Ex. 13

---

[1] Wife rented the Maryland residence to a tenant, and continued to do so at all relevant times in these proceedings.

[6] The marriage between Husband and Wife was troubled. After an argument with Wife, Husband left the Carmel residence in November 2013. On December 4, 2013, Husband filed a petition seeking dissolution of the marriage.

[7] During the course of the marriage, Husband had been employed but had, on a number of occasions, lost his employment. Also during the marriage, Husband used marital assets to invest in private businesses. During the pendency of the martial dissolution proceedings, Husband was unemployed, but continued to manage his investment portfolio. Also during the pendency of the proceedings, the trial court ordered Husband to pay child support of $166.17 per week.

[8] A final hearing was conducted on January 7, 2015. Testimony was offered concerning the couple's finances, each parent's plans for education and care of the children, and numerous other issues. After taking the evidence under advisement, on February 27, 2015, the trial court entered its final order in the form of written findings and conclusions.

[9] In its final order, the trial court found that Husband had accumulated a child support arrearage of $21,241.22. The court found that Husband was purposefully unemployed, and imputed weekly income to Husband of $1,525.50, and determined child support based upon Husband's imputed income and Wife's actual income of $2,222.00 per week.

[10] The court found that the value of the marital estate, net liabilities, was $1,847,973; of this, $1,083,151 was contributed by Husband, and $764,822 was contributed by Wife. Among the assets included in this total was an interest

Husband held in a business that Wife valued at $200,000, but which Husband insisted was bankrupt. Husband also claimed that his interests in two other businesses were also nearly valueless because those businesses, too, were near bankruptcy. Husband testified that he had used funds from investment accounts to purchase his interests in these businesses. However, the trial court found that Husband's "failure to acknowledge" the existence and value of an investment account valued at $423,000 "greatly undermine[d] his credibility as it pertaine[d] to testimony regarding the marital estate, and his testimony concerning his ability to support his children." The trial court also found that, by failing to earn income during the litigation, Husband had dissipated assets.

[11] The trial court ordered that the marital estate be divided equally between the parties, in compliance with the statutory presumption. The trial court concluded that Husband was not entitled to a $150,000 offset for the value of the Pennsylvania residence, the proceeds from the sale of which had been used as a down payment for the Carmel residence. In light of this decision and Husband's child-support arrearage, the trial court ordered Husband to pay Wife $180,405.72, which consisted of an equalization payment of $159,164.50 and the child support arrearage of $21,241.22. As part of the property division, the court ordered that Wife would retain possession of the Carmel residence subject to indebtedness on the home, ordered Wife to hold Husband harmless as to that indebtedness, and ordered Wife to refinance the residence within two years of the date of the final order.

[12] Husband now appeals.

# Discussion and Decision

## Standard of Review

[13] On appeal, Husband challenges specific aspects of the final order. In entering its final order, the trial court entered findings and conclusions without a written request from either party. We review a trial court's findings to determine if they are clearly erroneous, but review its conclusions *de novo,* even where the trial court labels them as findings. *Fobar v. Vonderahe,* 771 N.E.2d 57, 59 (Ind. 2002). Where a party challenges a division of marital assets as not being just and reasonable, we review the trial court's order for an abuse of discretion. *Id.*

[14] In determining the value of an asset, there is no abuse of discretion if there is sufficient evidence and reasonable inferences that support the trial court's result. *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). We consider the evidence in a light most favorable to the judgment and do not reweigh evidence *Id.* Nor will we reassess the credibility of witnesses. *Hendricks v. Hendricks*, 784 N.E.2d 1024, 1027 (Ind. Ct. App. 2003).

## Post-Nuptial Agreement

[15] We turn first to Husband's argument on appeal that the trial court erred when it did not enforce the agreement between Husband and Wife concerning the disposition of the $150,000 used as a down payment on the Carmel residence. On appeal, Husband contends that the trial court should have honored the agreement as a valid post-nuptial agreement, and that the trial court erred when it did not award him a refund of the money.

The agreement at issue provided, in relevant part:

> This letter is being written, and to be recognized as mutually signed and agreed upon official document to the State of Indiana, and/or the Hamilton County Judicial process regarding the down payment and new home purchase [for the Carmel residence] as referenced below.

> In the unlikely event that the undersigned husband and wife, [Husband], and [Wife] should separate and/or divorce, that the initial home purchase down payment of $150,000.00 (one hundred and fifty thousand USD) made solely by [Husband] will be refunded and or reallocated to him as a result of the final sale of the home…

Ex. 13. Husband contends that this was a valid post-nuptial agreement and that the court was required to enforce it. Having failed to do so, Husband argues, the trial court erred.

Indiana's statutes presume that, in a dissolution of marriage, each spouse will receive exactly half of the assets of the marital estate. Ind. Code § 31-15-7-5. That presumption may be rebutted. *Id.* Where a trial court deviates from the presumed 50/50 split, it must articulate its reasons for doing so. *Thompson v. Thompson*, 811 N.E.2d 888, 912-13 (Ind. Ct. App. 2004), *trans. denied*. In addition, our statutes provide for the enforceability of post-nuptial agreements that would lead to a different result:

> (a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for:

(1) the maintenance of either of the parties;

(2) the disposition of any property owned by either or both of the parties; and

(3) the custody and support of the children of the parties.

(b) In an action for dissolution of marriage:

(1) the terms of the agreement, if approved by the court, shall be incorporated and merged into the decree and the parties shall be ordered to perform the terms; or

(2) the court may make provisions for:

(A) the disposition of property;

(B) child support;

(C) maintenance; and

(D) custody;

as provided in this title.

(c) The disposition of property settled by an agreement described in subsection (a) and incorporated and merged into the decree is not subject to subsequent modification by the court, except as the agreement prescribes or the parties subsequently consent.

Ind. Code § 31-15-2-17.

[18] As this Court has observed:

> Other panels of this Court have recognized that "public policy favors the amicable settlement by written agreement of the property rights of citizens whose marriage is being dissolved." *Gaskell v. Gaskell,* 900 N.E.2d 13, 17 (Ind. Ct. App. 2009) (citing *Flansburg v. Flansburg,* 581 N.E.2d 430, 433 (Ind. Ct. App. 1991), *trans. denied*). It has long been held that antenuptial agreements are valid and binding "so long as they are entered into freely and without fraud, duress, or misrepresentation and are not, under the particular circumstances of the case, unconscionable[,]" *In re Marriage of Boren,* 475 N.E.2d 690, 693 (Ind. 1985), and we have concluded that the same should apply to reconciliation agreements made between parties in order to preserve the marriage. *Flansburg,* 581 N.E.2d at 436.

*Hall v. Hall*, 27 N.E.3d 281, 284-85 (Ind. Ct. App. 2015), *trans. denied*.

[19] Here, Husband contends that the agreement concerning the down payment for the Carmel residence is a valid post-nuptial or reconciliation agreement, and that he is entitled to repayment of the $150,000. Wife argues that the agreement is not a valid reconciliation agreement because by its own terms the agreement was not entered into in order to preserve the marriage, and because a necessary condition for its enforcement had not yet been met.

[20] The trial court's order is largely silent as to the validity of the agreement. The court appears to have accepted the agreement's validity, but also seems to have declined enforcement of the agreement on the basis of dissipation of marital assets: "The Court further finds that Husband has dissipated marital assets through failing to earn any income… The Court therefore finds that husband is

not entitled to an offset of $150,000." Despite these statements—in particular the finding of dissipation—the trial court nevertheless divided the marital estate evenly between the parties. Based upon a determination that the total value of the marital estate was $1,847,973, and after deducting from the award to Wife of $180,405.72 the $21,241.22 Husband owed in child support, the court's award to Wife represents exactly the amount required to equalize the marital estate between Husband's assets ($1,083,151) and those of Wife ($764,822): $159,164.50.[2] Thus, the trial court's order did not deviate from the statutory presumption.

[21] To the extent that Husband contends he was entitled to an offset, then, he must establish that the trial court erred in *not* deviating from the statutory presumption of a 50/50 split of the marital estate. He argues that the trial court erred in this regard when it did not grant him an offset against the division of assets based upon the agreement for refund of the down payment on the Carmel residence.

[22] The agreement, by its terms, entitles husband to refund of the down payment monies "as a result of the final sale of the home," Ex. 13, that is, final sale of the Carmel residence. But there has been no final sale. The trial court's order requires only that Wife refinance the Carmel residence; refinancing the

---

[2] The total value of the marital estate was $1,847,973. Equal division of this amount between the parties yields $923,986.50 each for Husband and Wife. Assets Wife contributed to the marriage totaled $764,822; to equalize the assets, Wife was entitled to an additional $159,164.50 in assets from Husband.

mortgage on a residence is not, however, a final sale. By the plain language of the agreement, then, Husband was thus not entitled to a $150,000 refund of the money used as a down payment on the Carmel residence. We cannot agree with Husband that the trial court erred when it did not order an offset or other refund of the down payment.

[23] We disagree with Wife, however, as to the enforceability *vel non* of the agreement. The language of the agreement is clear: Husband agreed to the use of the $150,000 from the sale of the Pennsylvania residence, and Wife agreed that, should the couple divorce, Husband would receive a refund of the down payment upon final sale of the Carmel residence.[3] Whether this is a reconciliation agreement or simply a post-nuptial agreement, neither party has argued that there was fraud, duress, misrepresentation, or unconscionability that would invalidate the agreement. *See Hall*, 27 N.E.3d at 284-85.

[24] Upon final sale of the residence at some future date, Husband may be entitled to repayment of the $150,000 from Wife. But that time has not yet arrived. We therefore find no error in the trial court's decision not to grant Husband a $150,000 offset against the 50/50 presumption.

---

[3] The language of the agreement appears to presume that Wife would be the selling party, and the trial court found that the Carmel residence was held in Wife's name.

# Valuation of Business Interest

[25]     We turn now to Husband's other issue on appeal, whether the trial court relied upon appropriate evidence in determining the value of a business in which Husband held an ownership interest.

[26]     In a dissolution of marriage proceeding, the trial court "shall divide the property of the parties." I.C. § 31-15-7-4(a). "The court shall divide the property in a just and reasonable manner," and may order distribution of those assets in any number of ways. I.C. § 31-15-7-4(b). In arriving at a value for the marital estate, "a trial court has broad discretion in determining the date upon which to value marital assets, and may select any date between the date of the filing of the petition for dissolution and the date of the final hearing." *Nowels v. Nowels*, 836 N.E.2d 481, 485 (Ind. Ct. App. 2005). It is the burden of the parties to provide evidence of the values of marital assets. *Campbell v. Campbell*, 993 N.E.2d 205, 215 (Ind. Ct. App. 2013), *trans. denied.* "Even where the circumstances would support a different award, we do not substitute our judgment for that of the trial court." *Nowels*, 836 N.E.2d at 485.

[27]     Here, Husband asserts that the trial court abused its discretion in its valuation of his interest in a business called JJ Pharma.[4] Husband and Wife agree that Husband invested $200,000 in the business. They disagree, however, as to the

---

[4] JJ Pharma appears to have successor entities, the relationship of which to JJ Pharma is not clear from the record. We refer to the business as JJ Pharma throughout.

trial court's use of that figure in its valuation of the business for purposes of the determination and distribution of the marital estate. Husband contends that the trial court abused its discretion because he testified that JJ Pharma was "basically bankrupt," Tr. at 57, and thus the trial court's assignment of a value of $200,000 for purposes of distribution of the marital assets was an abuse of discretion. Wife contends that setting a value of $200,000 was within the trial court's discretion.

[28] We agree with Wife. The only evidence presented by either party as to the value of Husband's interest in JJ Pharma was a statement from the company indicating the total amount invested, a subsequent item of correspondence from a successor entity in 2012 stating that "in prior years the Company may not have met your expectations," Ex. J, and Husband's testimony that JJ Pharma was "basically bankrupt." Tr. at 57. However, the trial court made an express finding that Husband's testimony was not credible as to financial matters: "the Court finds the Husband's failure to acknowledge [a] Scottrade [brokerage account] of $423,000 greatly undermines his credibility as it pertains to his testimony regarding the marital estate, and his testimony concerning his ability to support his children."

[29] Thus, the trial court concluded that Husband's testimony concerning JJ Pharma's financial state and the value of the investment was not credible. The court accordingly was left to set the value of the investment with only one item of evidence: the $200,000 amount invested in the business. While Husband argues that we need not reweigh evidence to reverse the trial court's decision,

his argument boils down to just such a request. That the trial court could have reached a different result does not mean that we must do so, *Nowels*, 836 N.E.2d at 485, and we cannot reassess the credibility of witnesses or reweigh evidence. *Quillen*, 671 N.E.2d at 102; *Hendricks*, 784 N.E.2d at 1027. We accordingly find no abuse of discretion in the trial court's valuation of Husband's interest in JJ Pharma, and we leave undisturbed the trial court's decision regarding the distribution of marital assets.

# Conclusion

[30] The trial court did not err when it did not grant Husband a $150,000 offset related to the use of funds for a down payment on the marital residence. The trial court did not abuse its discretion when it assessed the value of a business interest at $200,000.

[31] Affirmed.

Mathias, J., concurs.

Baker, J., concurs in result in part with separate opinion.

| | |
|---|---|
| Greg Rink, | Court of Appeals Case No. |
| *Appellant-Petitioner,* | 29A02-1503-DR-189 |
| v. | |
| Emily Rink, | |
| *Appellee-Respondent.* | |

**Baker, Judge, concurring in result in part.**

[32] While I fully agree with the result reached by the majority, I part ways with its analysis with respect to the parties' post-nuptial agreement. As the majority concludes, the agreement between Husband and Wife is valid, binding, and enforceable whether it "is a reconciliation agreement or simply a post-nuptial agreement[.]" Slip op. p. 11. I disagree, however, with the majority's determination that the agreement does not come into effect until some future date when Wife sells the residence. The time for division of the marital pot is at the time of dissolution, and drawing this out into the future is not fair to the parties or to their children.

[33] In my view, therefore, the trial court should have initially awarded $150,000 to Husband pursuant to the post-nuptial agreement. That said, the trial court's findings regarding dissipation of marital assets, underemployment, and a child

support arrearage would readily support a determination that the $150,000 is offset by virtue of those findings. In other words, even if Husband was originally awarded the $150,000, I believe that the final result reached by the trial court, which amounts to a 50/50 division of the marital estate, is supported by the trial court's findings of fact and conclusions thereon. To reach a different result would require us to reweigh evidence and assess witness credibility, which we will not do. Consequently, I agree that the trial court's judgment should be affirmed and concur in the result reached by the majority on this issue. In all other respects, I fully concur with the majority opinion.