GKN CO., formerly known as Gust K. Newberg Construction Company, Appellant–Defendant,

v.

Larry MAGNESS, Appellee–Plaintiff.

No. 49S02–0002–CV–116.

Supreme Court of Indiana.

March 13, 2001.

Ronald J. Waicukauski, Heidi G. Goebel, White & Raub, LLP, Indianapolis, IN, Attorneys for Appellant.

James H. Young, Young & Young, Indianapolis, IN, Attorney for Appellee.

## ON PETITION TO TRANSFER

RUCKER, Justice

### Case Summary

A truck driver sued his general contractor for injuries sustained while working on a highway construction project. Contending the truck driver was its employee, the general contractor responded with a motion to dismiss for lack of subject matter jurisdiction. According to the general contractor, the truck driver's exclusive remedy rested with the Indiana Worker's Compensation Act. The trial court denied the motion, and the general contractor pursued an interlocutory appeal. Concluding that a majority of the factors outlined by this Court in *Hale v. Kemp*, 579 N.E.2d 63 (Ind.1991), weighed in favor of the general contractor, the Court of Appeals reversed in a memorandum decision. *GKN Co. v. Magness*, 712 N.E.2d 57 (Ind.Ct.App.1999). Having previously granted transfer, we now affirm the trial court's judgment. In this opinion we hold the following: (1) the factors set forth in *Hale* must be weighed and balanced against each other; (2) the right of control is the most important factor in determining the existence of an employment relationship; and (3) the allegations in the complaint determine who has the burden of demonstrating the exclusivity of the Indiana Worker's Compensation Act.

### Facts

GKN Co., formerly known as the Gust K. Newberg Construction Company, was the general contractor of an I–465/I–65

highway construction project. Starnes Trucking, Inc. entered into a written agreement with GKN to haul various materials to and from a GKN job site known as a "batch plant"—a facility where water, cement, and gravel are mixed to create concrete to be used during construction. In turn, Starnes Trucking hired Larry Magness to drive a cement truck. Specifically Magness was required to haul concrete from the batch plant to various highway construction sites.

While present at the batch plant on July 14, 1992, Magness proceeded to refuel his truck. The tank containing the fuel was surrounded by a concrete-covered retaining wall designed to contain the fuel in the event of a spill. Magness was standing on the wall trying to reach the fuel nozzle on top of the tank when the wall collapsed. Falling to the ground, Magness sustained injuries to his right wrist and forearm.

Magness received worker's compensation from Starnes Trucking. He also filed a complaint for damages against GKN complaining of negligence in the maintenance and construction of the retaining wall. Relying on Indiana Trial Rule 12(B)(1), GKN filed a motion to dismiss the complaint for lack of subject matter jurisdiction contending Magness was an employee of GKN. Thus, according to GKN, Magness' exclusive remedy rested with the Indiana Worker's Compensation Act. The trial court denied the motion without reciting its reasons or entering factual findings. On interlocutory review, the Court of Appeals reversed the judgment of the trial court. On transfer, we now affirm the trial court's judgment.

### Standard of Review

When an employer defends against an employee's negligence claim on the basis that the employee's exclusive remedy is to pursue a claim for benefits under the Indiana Worker's Compensation Act, the defense is properly advanced through a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1). *Foshee v. Shoney's,*

*Inc.,* 637 N.E.2d 1277, 1280 (Ind.1994). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support. *Indiana Dep't of Highways v. Dixon,* 541 N.E.2d 877, 884 (Ind.1989); *Borgman v. State Farm Ins. Co.,* 713 N.E.2d 851, 854 (Ind.Ct.App. 1999), *trans. denied.* In addition, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts. *Borgman,* 713 N.E.2d at 854.

The trial court standard for evaluating Trial Rule 12(B)(1) motions to dismiss is not in dispute. However, the standard for appellate review of a trial court's grant or denial of such a motion requires clarification. For example, it has been declared that when evaluating the trial court's ruling on a motion to dismiss for lack of subject matter jurisdiction, a reviewing court will affirm the judgment of the trial court upon any theory supported by the evidence of record. *See, e.g., M.V. v. Charter Terre Haute Behavioral Health Sys., Inc.,* 712 N.E.2d 1064, 1066 (Ind.Ct. App.1999); *Ransburg Indus. v. Brown,* 659 N.E.2d 1081, 1083 (Ind.Ct.App.1995), *trans. denied; Tapia v. Heavner,* 648 N.E.2d 1202, 1206 (Ind.Ct.App.1995). By contrast it has also been declared that where the facts are not in dispute, a court of review will look *de novo* at the trial court's ruling on a Trial Rule 12(B)(1) motion to dismiss. *See, e.g., Save the Valley, Inc., v. Indiana Dep't of Envtl. Mgmt.,* 724 N.E.2d 665, 668 (Ind.Ct.App.2000), *trans. denied; Fratus v. Marion Cmty. Schs. Bd. of Trs.,* 721 N.E.2d 280, 284 (Ind.Ct.App.1999), *trans. granted,* 735 N.E.2d 232 (2000); *McEnroy v. St. Meinrad Sch. of Theology,* 713 N.E.2d 334, 336 (Ind.Ct.App.1999), *trans. denied, cert. denied,* 529 U.S. 1068, 120 S.Ct. 1675, 146 L.Ed.2d 484 (2000); *Common Council of City of Hammond v. Matonovich,* 691 N.E.2d 1326, 1328 (Ind.Ct.App.1998), *trans. denied; Rieheman v. Cornerstone*

*Seeds, Inc.,* 671 N.E.2d 489, 491 (Ind.Ct. App.1996), *trans. denied.*

A review of the case authority shows that the standard of appellate review for Trial Rule 12(B)(1) motions to dismiss is indeed a function of what occurred in the trial court. That is, the standard of review is dependent upon: (i) whether the trial court resolved disputed facts; and (ii) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a "paper record."

■ If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law. Under those circumstances no deference is afforded the trial court's conclusion because "appellate courts independently, and without the slightest deference to trial court determinations, evaluate those issues they deem to be questions of law." *Bader v. Johnson,* 732 N.E.2d 1212, 1216 (Ind. 2000). Thus, we review *de novo* a trial court's ruling on a motion to dismiss under Trial Rule 12(B)(1) where the facts before the trial court are undisputed.

■ If the facts before the trial court are in dispute, then our standard of review focuses on whether the trial court conducted an evidentiary hearing. Under those circumstances, the court typically engages in its classic fact-finding function, often evaluating the character and credibility of witnesses. *Anthem Ins. Cos., Inc. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1238 (Ind.2000). Thus, where a trial court conducts an evidentiary hearing, we give its factual findings and judgment deference. *Menard, Inc. v. Dage–MTI, Inc.,* 726 N.E.2d 1206, 1210 (Ind.2000). And in reviewing the trial court's factual findings and judgment, we will reverse only if they are clearly erroneous. *Id.* Factual findings are clearly erroneous if the evidence does not support them, and a judgment is clearly erroneous if it is unsupported by the factual findings or conclusions of law. *Id.*

■ However, where the facts are in dispute but the trial court rules on a paper record without conducting an evidentiary hearing, then no deference is afforded the trial court's factual findings or judgment because under those circumstances a court of review is "in as good a position as the trial court to determine whether the court has subject matter jurisdiction." *MHC Surgical Ctr. Assocs., Inc. v. State Office of Medicaid Policy & Planning,* 699 N.E.2d 306, 308 (Ind.Ct.App. 1998). *See also Farner v. Farner,* 480 N.E.2d 251, 257 (Ind.Ct.App.1985) (agreeing with the proposition that "where a case is tried wholly upon documents or stipulations, the appellate tribunal is in as good a position as the trial court to determine the force and effect of the evidence.") Thus, we review *de novo* a trial court's ruling on a motion to dismiss where the facts before the court are disputed and the trial court rules on a paper record.

In this case, several facts before the trial court were in dispute and just as important even for those facts not in dispute, the parties disagree about the inferences to be drawn from those undisputed facts. Further, the trial court did not conduct an evidentiary hearing, rather it ruled upon a paper record consisting of the parties' complaints, contract, affidavits of witnesses, and excerpts of deposition testimony. Accordingly, in reviewing the factual findings as well as the conclusions of law in this case, we apply a *de novo* standard of review. In so doing, we will affirm the judgment of the trial court on any legal theory the evidence of record supports. However, the ruling of the trial court is presumptively correct, and we will reverse on the basis of an incorrect factual finding only if the appellant persuades us that the balance of evidence is tipped against the trial court's findings.

### Discussion

### I.

The Indiana Worker's Compensation Act (the "Act") provides the exclusive remedy for recovery of personal injuries aris-

ing out of and in the course of employment. Ind.Code § 22–3–2–6. Although the Act bars a court from hearing any common law claim brought against an employer for an on-the-job injury, it does permit an action for injury against a third-party tortfeasor provided the third-party is neither the plaintiff's employer nor a fellow employee. I.C. § 22–3–2–13. Here, Magness contends that he is entitled to recover against GKN because he was not employed by GKN at the time he was injured. Rather, according to Magness, Starnes Trucking employed him. GKN does not dispute that Starnes Trucking employed Magness. It contends, however, that Magness was a "dual employee" of both GKN and Starnes Trucking.

■■■■ The Act contemplates that one worker may simultaneously have two employers. I.C. § 22–3–3–31. Where two employers "so associate themselves together that both are in direct control of the employee and he is made accountable to both, he will be considered an employee of both employers...." *U.S. Metalsource Corp. v. Simpson,* 649 N.E.2d 682, 685 (Ind.Ct.App.1995) (quoting *Jackson Trucking Co. v. Interstate Motor Freight Sys.,* 122 Ind.App. 546, 104 N.E.2d 575, 580 (1952)). Determining whether an employer-employee relationship exists ultimately is a question of fact. *Detrick v. Midwest Pipe & Steel, Inc.,* 598 N.E.2d 1074, 1077 (Ind.Ct.App.1992). In making this determination, the fact-finder must weigh a number of factors, none of which is dispositive. This Court has identified the most important of those as: (1) right to discharge; (2) mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and, (7) establishment of the work boundaries. *Hale v. Kemp,* 579 N.E.2d 63, 67 (Ind.1991). *Cf. Mortgage Consultants, Inc. v. Mahaney,* 655 N.E.2d 493, 495–96 (Ind.1995) (applying a non-exhaustive list of ten factors as set forth in the Restatement (Second) of Agency § 220(1) cmt. c (1958)). A number of cases suggest that if a majority of the seven *Hale* factors is present, then an employer-employee relationship exists.[1] However, consistent with *Hale,* we now reaffirm that the factors must be weighed against each other as a part of a balancing test as opposed to a mathematical formula where the majority wins. As explained in greater detail below, when applying this balancing test, the trial court should give the greatest weight to the right of the employer to exercise control over the employee.

In *Rensing v. Indiana State University Board. of Trustees.,* 444 N.E.2d 1170 (Ind. 1983), this Court declared for the first time, "[T]he *primary consideration* is that there was an intent that a contract of employment, either express or implied, did exist. In other words, there must be a mutual belief that an employer-employee relationship did exist." *Id.* at 1173 (emphasis added).[2] In reaching this conclusion, we cited *Fox v. Contract Beverage Packers, Inc.,* 398 N.E.2d 709 (Ind.Ct.App. 1980), and *Gibbs v. Miller,* 152 Ind.App. 326, 283 N.E.2d 592 (1972). However, upon closer examination, we conclude that these two cases do not support that precise holding. *Fox* merely stated "the courts have also uniformly held that in order for there to be an employer-employee relationship there must be a contract, either express or implied." *Fox,* 398 N.E.2d at 712.

---

1. *See, e.g., Southport Little League v. Vaughan,* 734 N.E.2d 261, 268 n. 6 (Ind.Ct.App.2000), *trans. denied; Black v. Employee Solutions, Inc.,* 725 N.E.2d 138, 143 (Ind.Ct.App.2000); *Nowicki v. Cannon Steel Erection Co.,* 711 N.E.2d 536, 540 (Ind.Ct.App.1999), *trans. denied; Walters v. Modern Aluminum,* 699 N.E.2d 671, 675 (Ind.Ct.App.1998), *trans. denied; Davis v. Cent. Rent–A–Crane, Inc.,* 663 N.E.2d 1177, 1180 (Ind.Ct.App.1996); *Tapia,* 648 N.E.2d at 1207; *Williams v. R.H. Marlin, Inc.,* 656 N.E.2d 1145, 1153 (Ind.Ct.App. 1995).

2. *Hale* also quotes *Rensing* for this proposition. *See Hale,* 579 N.E.2d at 67.

*Gibbs*, on the other hand, declared that "[t]he general test in determining the existence of a[n] [employer-employee] relationship is the right to direct and control the conduct of the alleged servant at the time the negligent act occurred." *Gibbs*, 283 N.E.2d at 594–95.

■ Our research does reveal that the intent or belief of the parties may be an important factor but only to the extent that it indicates an assumption of control by one party and submission to control by the other party. *See* Restatement (Second) of Agency § 220(2) cmt. m. This is so apparently because of the subjective nature of an inquiry concerning the parties' intent. On the other hand, a determi-

nation concerning control is more objective. Among other things, it suggests a certain economic interdependency and implicates the employer's right to establish work boundaries, set working hours, assign duties, and create job security.[3] We conclude therefore that although not dispositive, the right to control the manner and means by which the work is to be accomplished is the single most important factor in determining the existence of an employer-employee relationship.

## II.

■ We next address who bears the burden of proof in this case. The lack of subject matter jurisdiction may be

**3.** We find further support for this view in those jurisdictions that have considered the issue. *See, e.g., Santiago v. Phoenix Newspapers, Inc.*, 164 Ariz. 505, 794 P.2d 138, 142 (1990) ("Where th[e] right of control exists, the inference of the employer-employee relationship is strengthened."); *Empire Star Mines Co. v. California Employment Comm'n*, 28 Cal.2d 33, 168 P.2d 686, 692 (1946) ("[T]he most important factor [in determining whether an employer-employee relationship exists] is the right to control the manner and means of accomplishing the result desired."), *overruled on other grounds by California v. Sims*, 32 Cal.3d 468, 186 Cal.Rptr. 77, 651 P.2d 321 (1982); *Porter v. Pathfinder Servs., Inc.*, 683 A.2d 40, 42 (Del.1996) ("In determining whether an employer-employee relationship exists,] [t]he greatest weight is given to the issue of control."); *4139 Mgmt. Inc. v. Dep't of Labor and Employment*, 763 So.2d 514, 517 (Fla.Dist.Ct.App.2000) ("[I]f control is extended to the means used to achieve the results, there is generally an employer-employee relationship."); *Ragler Motor Sales v. Indus. Comm'n*, 93 Ill.2d 66, 66 Ill.Dec. 342, 442 N.E.2d 903, 905 (1982) ("The right of the employer to control the way in which the work is performed is an important factor in determining whether the claimant is an employee...."); *Roberts v. Louisiana*, 404 So.2d 1221, 1225 (La.1981) ("The single, most important factor to consider in deciding whether the employer-employee relationship exists ... is the right of the employer to control the work of the employee."); *Whitehead v. Safway Steel Prod., Inc.*, 304 Md. 67, 497 A.2d 803, 809 (1985) ("[W]hether the employer has the right to control and direct the employee in the performance of the work and in the manner in which the work is to be done is the 'decisive,' or 'controlling' test.") (quotations omit-

ted); *Silvia v. Woodhouse*, 356 Mass. 119, 248 N.E.2d 260, 264 (1969) ("[T]he existence of [an employer-employee] relationship depends on whether there is a right to control."); *Krause v. Trs. of Hamline Univ. of Minn.*, 243 Minn. 416, 68 N.W.2d 124, 127 (1955) ("Undoubtedly the most important single factor in determining whether an employer-employee relationship exists is that of the right to control."); *Hutchison v. St. Louis Altenheim*, 858 S.W.2d 304, 305 (Mo.Ct.App.1993) ("The pivotal question in determining the existence of an employer-employee relationship is whether the 'employer had the right to control the means and manner of the service, as distinguished from controlling the ultimate results of the service.'") (quoting *Howard v. Winebrenner*, 499 S.W.2d 389, 395 (Mo.1973)); *Piantanida v. Bennett*, 17 N.J. 291, 111 A.2d 412, 414 (1955) (In determining whether an employment relationship exists "[t]he element of control is the one most stressed."); *Jay Lines, Inc. v. Workmen's Comp. Appeal Bd.*, 66 Pa.Cmwlth. 299, 443 A.2d 1370, 1372 (1982) ("[T]he crucial test [in determining whether an employment relationship exists is] whether the alleged employer assumes control of the work to be done and the manner in which it is performed."); *Averett v. Grange*, 909 P.2d 246, 249 (Utah 1995) ("In workers' compensation cases, this court has consistently held that whether an employer-employee relationship exists depends upon the employer's right to control the employee."); *Hinds v. Dep't of Labor & Indus. of State of Washington*, 150 Wash. 230, 272 P. 734, 735 (1928) ("[In determining whether an employment relationship exists,] [t]he final test [is] whether there was the right of control.").

raised as an affirmative defense either in the answer to the complaint or in a motion to dismiss. *See* Ind.Trial Rule 8(C); T.R. 12(B)(1). As a general proposition, the party challenging subject matter jurisdiction carries the burden of establishing that jurisdiction does not exist. *Methodist Hosp. of Ind., Inc. v. Ray*, 551 N.E.2d 463, 467 (Ind.Ct.App.1990), *opinion adopted by* 558 N.E.2d 829 (Ind.1990). Because there is a strong public policy favoring the coverage of employees under the Act, a number of decisions have declared that once an employer raises the issue of the exclusivity of the Act, the burden automatically shifts to the employee.[4] However, as Judge Kirsch explains, this public policy is not advanced where its effect "immunize[s] third-party tort feasors and their liability insurers from liability for negligence which results in serious injuries to one who is not in their employ." *Nowicki*, 711 N.E.2d at 544 (Kirsch, J., dissenting). We agree. Indeed this Court has never endorsed the proposition that an employee automatically bears the burden of proof on the question of jurisdiction when the issue is raised in the context of a worker's compensation claim. Rather, we have held:

> [W]hen the plaintiff's own complaint recites facts demonstrating the employment relationship and its role in the injuries alleged, the burden shifts to the plaintiff to demonstrate some grounds for taking the claim outside the Worker's Compensation Act.

*Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind.1994). Hence, when challenging the trial court's jurisdiction, the employer bears the burden of proving that the employee's claim falls within the scope of the Act unless the employee's complaint demonstrates the existence of an employment relationship. Only where the employee's complaint demonstrates the existence of an employment relationship does the burden then shift to the employee to show some ground for taking the case outside of the Act. *Id.* Thus, we disapprove of the language in those cases declaring that once an employer raises the issue of the exclusivity of the Act, the burden automatically shifts to the employee. *See supra* note 4.

In this case Magness' complaint does not recite facts demonstrating the existence of an employment relationship between Magness and GKN. In fact, as one might anticipate, in an effort to show that the Act did not apply, the complaint specifically alleges that Magness was an employee of Starnes Trucking. As to facts showing the existence of a dual employment relationship, at most the complaint was ambiguous on this point. R. at 15–16. Accordingly, as the party challenging the trial court's jurisdiction, GKN had the burden to establish lack of subject matter jurisdiction.

### III.

■ We turn now to an examination of the *Hale* factors to determine whether GKN carried its burden of establishing that Magness' claim lay within the jurisdiction of the Act. Stated differently, we examine whether GKN established that the trial court lacked jurisdiction to adjudicate Magness' claim.

#### 1. Right to Discharge

Thomas Beaty, the GKN supervisor at the batch plant, testified by way of deposition that if a driver was not performing his duties properly, he would "give [the driver] three warnings." Supp. R. at 50. After giving a driver his first warning, Beaty would call Margie Starnes, the owner of Starnes Trucking, to let her know that he was having a problem with a particular driver and she should fix the problem. Supp. R. at 50–51. After giving a driver a third warning, Beaty would tell that driver

---

4. *See, e.g., Nowicki*, 711 N.E.2d at 539; *Walters*, 699 N.E.2d at 673; *Lawson v. Raney Mfg., Inc.*, 678 N.E.2d 122, 125 (Ind.Ct.App. 1997), *trans. denied; Fleischmann v. Wausau*

*Bus. Ins. Co.*, 671 N.E.2d 473, 475 (Ind.Ct. App.1996), *trans. denied; Gonzalez v. Clinton*, 663 N.E.2d 1157, 1158 (Ind.Ct.App.1996), *trans. denied; Davis*, 663 N.E.2d at 1179.

that he was no longer needed at the construction site and he should get in touch with Margie. Supp. R. at 50. Beaty would then call Margie himself to inform her of the action taken. *Id.*

Although Beaty did not have the authority to terminate Magness' employment with Starnes Trucking, he could terminate Magness' employment with GKN by telling Magness that he was no longer needed at the construction site and informing Margie of the action taken. Indeed, Beaty had previously discharged other Starnes Trucking employees in such a manner. Supp. R. at 48–49. In *U.S. Metalsource,* an employer-employee relationship was found to exist under similar facts. "Although Metalsource [the general contractor] did not have the power to terminate [the plaintiff's] employment with Whiteford [the subcontractor], it could terminate his employment with Metalsource by calling a Whiteford supervisor and instructing him that it no longer wanted [the plaintiff] to deliver its steel." *U.S. Metalsource,* 649 N.E.2d at 685. This right of discharge factor weighs in favor of a conclusion that Magness was an employee of GKN.

### 2. Mode of Payment

The record shows that although Beaty was responsible for signing Magness' time card, Magness was paid directly by Starnes Trucking. Starnes Trucking issued Magness' paychecks, withheld his taxes, paid his worker's compensation insurance premiums, and provided him with health insurance. Supp. R. at 39. GKN argues "the fact that Magness received his paycheck from Starnes would not defeat the existence of an employer-employee relationship between GKN and Magness." Brief of Appellant at 8. We agree. However, it is a factor that points to a conclusion that Magness was not an employee of GKN.

### 3. Supplying Tools or Equipment

The contract between GKN and Starnes Trucking required Starnes Trucking to furnish the materials, equipment, and fuel for the construction project. Supp. R. at 74, 77. If this in fact was the only evidence before the trial court, then it would appear that Magness was in the employ of only Starnes Trucking. However, the record shows that the parties' actual course of conduct was substantially different than expressed in the written agreement. Specifically, there was evidence before the trial court that GKN leased the trucks to Starnes Trucking, performed all maintenance on the trucks, and provided the fuel and washout equipment for the trucks. Supp. R. at 40, 41, 66, 67, 123–26. Indeed, GKN owned the fueling equipment that Magness used when he was injured. Accordingly, this factor also weighs in favor of a conclusion that Magness was an employee of GKN.

### 4. Belief of the Parties in the Existence of an Employer–Employee Relationship

Here, both parties agree, "Neither Magness nor GKN believed at the time of the project that there was an employer-employee relationship between them." Brief of Appellant at 8; Brief of Appellee at 16. Nonetheless, GKN directs our attention to case authority standing for the proposition that the absence of such a belief is common in dual employment situations. *See, e.g., U.S. Metalsource,* 649 N.E.2d at 686; *Beach v. Owens–Corning Fiberglas Corp.,* 542 F.Supp. 1328, 1330 (N.D.Ind.1982), *aff'd,* 728 F.2d 407 (7th Cir.1984). In both cases the courts found the existence of an employment relationship where only the *employee* did not believe he was an employee of both businesses. *U.S. Metalsource,* 649 N.E.2d at 686; *Beach,* 542 F.Supp. at 1331. Here, by contrast, neither party believed an employer-employee relationship existed. Accordingly, this factor weighs against a conclusion that GKN employed Magness.

### 5. Control Over the Means Used in the Results Reached

As we have already indicated, although not dispositive, control is the most impor-

tant factor when determining whether an employer-employee relationship exists. The contract between GKN and Starnes Trucking provides in pertinent part:

> The General Contractor and the Subcontractor to this Agreement have an independent contractor status in relation to each other. As an expert in its field of work, the Subcontractor has sole control over the means and methods by which his work is to be done, including all requirements for doing the work safely, and the General Contractor is not in charge of the construction, means and methods, or of the safety of the Subcontractor's work.

Supp. R. at 79. In addition to this contractual language, Beaty testified during his deposition that his only direction to Magness was to give him a "ticket" for each load of concrete he hauled, inform him where to take each load of concrete, give him a cut off sign at the end of the day, and tell him what time to return the following morning. Supp. R. at 52–54. However, sometimes the State inspector, not Beaty, gave Magness the "ticket" and told him where to take the load of concrete. Supp. R. at 54, 55. Further, Beaty never met with Magness to discuss his work on the project, and he never instructed Magness how to maneuver his truck or pour the concrete. Supp. R. at 53, 55. Although GKN may have exerted some control over Magness, it did not do so concerning the means used in the results reached. In this regard, Magness' relationship with GKN was typical of that of an independent contractor. *See, e.g., Mortgage Consultants,* 655 N.E.2d at 495 ("In contrast to employees, generally 'an independent contractor controls the method and details of his task and is answerable to the principal as to results only.'") (quotation omitted). Accordingly, this factor weighs heavily against a conclusion that GKN employed Magness.

*6. Length of Employment*

The record shows that Magness had only been working at the construction site three months when he sustained injury. GKN points out that Magness was working out of a Teamster's Union Hall and was hired for different temporary jobs. In April 1992, Magness was hired to work on the I–465/I–65 highway construction project of which GKN was the general contractor. Magness' three months of employment was also the same length of time of his employment with Starnes Trucking. The only work that Magness did for Starnes Trucking was in connection with the GKN project. He never worked for Starnes Trucking before the accident and has not worked for Starnes Trucking since then. According to GKN, the foregoing facts point to a conclusion that Magness was its employee.

We first observe that the longer the length of employment, the more indicative it is of an employer/employee relationship. Restatement (Second) of Agency § 220(2) cmt. j. The length of employment here was so abbreviated that it sheds little light one way or the other as to whether Magness was an employee of GKN. More importantly, GKN has not shown that there was any discussion between the parties concerning the length of time that Magness would work for GKN. *See, e.g., Fox,* 398 N.E.2d at 712 (finding an employment relationship was indicated because "Contract [the 'borrowing' employer] determined the length of time Fox would be required to work at the plant...."). We conclude that the length of employment in this case cannot be said to weigh in favor of finding an employment relationship between Magness and GKN.

*7. Establishment of Work Boundaries*

Magness contends the work boundaries "were established by the State of Indiana, by way of plans and specifications and location for the road repair project." Brief of Appellee at 32. On the other hand, GKN insists that it established the work boundaries by virtue of the fact that it supervised the batch plant, to and from which Magness hauled loads of concrete. Although the actual location of the road

repair was established by the Indiana Department of Transportation, it was GKN's batch plant where Magness reported to work, received instructions, picked up cement loads, parked his truck at the end of day, and sustained injury. This evidence points in favor of an employment relationship between Magness and GKN.

### Conclusion

Balancing the *Hale* factors and giving considerable weight to the element of control, we conclude there was sufficient evidence before the trial court to show that Magness was not an employee of GKN and thus GKN failed to carry its burden of proving that Magness' claim of injury fell within the scope of the Act. Accordingly, the trial court properly denied GKN's motion to dismiss for lack of subject matter jurisdiction. We therefore affirm the trial court's judgment. This cause is remanded for further proceedings.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.