CURTIS CROSS, Appellant-Plaintiff,
v.
BON L MANUFACTURING COMPANY, Appellee-Defendant,
No. 56A03-0802-CV-49
Court of Appeals of Indiana.
September 3, 2008
SAMANTHA M. JOSLYN Law Offices of Charles P. Dargo, P.C. Demotte, Indiana Attorneys for Appellant.
THOMAS C. HAYS, STEPHANIE L. CASSMAN, Lewis Wagner, LLP, Indianapolis, Indiana, Attorney for Appellee.

MEMORANDUM DECISION
ROBB, Judge

Case Summary and Issue
Curtis Cross appeals the trial court's dismissal of his complaint as barred by the Worker's Compensation Act (the "Act"). Concluding that Cross should be considered a dual employee of both Bon L Manufacturing ("Bon L") and GRUS Construction Personnel ("GRUS"), we affirm.

Facts and Procedural History
On September 18, 2006, Cross accepted employment with GRUS, a construction staffing company, as a millwright technician. GRUS previously had entered into an Employee Agreement (the "Agreement") with Bon L to "provide employees to perform Services. . . . on a permanent or temporary basis." Appellant's Appendix at 16. The Agreement states that Bon L may "direct [GRUS employees] in the performance of their daily duties and utilize their skills to the extent they are qualified as determined by [Bon L]. Id. The Agreement grants Bon L the right to dismiss a worker at any time for unsatisfactory performance and allows workers to choose not to return to Bon L's jobsite. Pursuant to the Agreement, GRUS computes wages, withholds taxes, maintains all necessary personnel and payroll records, and obtains and maintains worker's compensation insurance for its employees working at Bon L. GRUS invoices Bon L for each hour worked by GRUS's employees to receive compensation. Bon L ensures compliance with all OSHA and similar requirements, provides any jobsite-specific training required by OSHA, provides and ensures the use of safety equipment, provides general liability insurance coverage for GRUS employees working at Bon L, and assumes responsibility for any liability resulting from duties performed by GRUS employees working at Bon L. The initial term of the Agreement was for one year automatically continuing on a monthly basis unless terminated by either party in writing.
GRUS assigned Cross to work for Bon L at Bon L's Kentland, Indiana plant beginning on September 18, 2006. Cross worked as a maintenance technician, maintaining the head presses and conveyor works throughout the plant. Cross worked with both GRUS and Bon L employees but was supervised solely by Bon L. Bon L provided Cross with three days of initial training. Bon L gave Cross specific, task-by-task instructions for daily work and required Cross to submit daily reports of his work. In addition, Cross was expected to either fix any hazard he saw in the workplace or notify a Bon L supervisor of the hazard. Cross signed in and out each day as he arrived to and left work. GRUS paid Cross's wages and provided him with a per diem allowance for expenses. Cross supplied his tools and safety equipment at the worksite. In his deposition testimony, Cross refers to himself as an employee of GRUS.
On September 26, 2006, Cross stepped into a large hole while working at the Bon L plant and suffered a broken ankle. Cross filled out an incident report for GRUS. Cross also filed for and received worker's compensation benefits from GRUS. Cross then filed a claim against Bon L alleging negligence in maintenance of the premises and failure to make repairs and/or to warn of unreasonably dangerous conditions. Bon L filed a motion to dismiss for lack of subject matter jurisdiction asserting that the exclusivity provision of the Act barred Cross's claim. The trial court heard arguments from counsel for both parties and granted Bon L's motion without explanation. Cross now appeals.

Discussion and Decision
Cross argues that the trial court erred when it determined that he was a dual employee of GRUS and Bon L and granted Bon L's motion to dismiss his claim for lack of subject matter jurisdiction.

I. Standard of Review
The standard for appellate review of a trial court's grant of a motion to dismiss pursuant to Trial Rule 12(B)(1) is a function of what occurred in the trial court. GKN Co. v. Magness, 744 N.E.2d 397, 401 (Ind. 2001). The standard of appellate review is dependent upon: (1) whether the trial court resolved disputed facts; and (2) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a "paper record." Id.
If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law and no deference is afforded to the trial court's conclusion.
Id. The standard of review is de novo. Id.
If the facts before the trial court are in dispute, then our review focuses on whether the trial court conducted an evidentiary hearing. Id. Where the trial court conducts an evidentiary hearing, we give its factual findings and judgment deference. Menard Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000). In reviewing a trial court's findings of fact and judgment, we will reverse only if they are clearly erroneous. GKN, 744 N.E.2d at 401. Where the facts are in dispute but the trial court rules on a paper record without conducting an evidentiary hearing, then no deference is afforded to the trial court's factual findings or judgment because under those circumstances, a court of review is "in as good a position as the trial court to determine whether the court had subject matter jurisdiction." MHC Surgical Ctr. Assocs., Inc. v. State Office of Medicaid Policy & Planning, 699 N.E.2d 306, 308 (Ind. Ct. App. 1998).
Here, although the parties largely agree on the facts, they disagree about the inferences to be drawn from the facts. The trial court heard arguments from counsel for both parties and then ruled on a "paper record." Therefore, we apply a de novo standard of review to both the factual findings and the conclusions of law. See GKN, 744 N.E.2d at 401. We will affirm the trial court's judgment on any legal theory supported by the evidence. Id. Further, the ruling of the trial court is presumptively correct, and we will reverse on the basis of an incorrect factual finding only if the appellant persuades us that the balance of evidence is tipped against the trial court's findings. Id.

II. Dual Employee Status
The Act provides the exclusive remedy for employees who suffer injuries arising out of and in the course of employment. Ind. Code § 22-3-2-6; Nickels v. Bryant, 839 N.E.2d 1211, 1215 (Ind. Ct. App. 2005), trans. denied. The Act bars a court from hearing a common-law claim brought against an employer for an on-the-job injury; however, it does permit a claim brought against a third-party tortfeasor who is neither the plaintiff's employer nor a fellow employee. GKN, 744 N.E.2d at 402. The Act contemplates that an employee may simultaneously have two employers. Ind. Code § 22-3-3-31. Where two employers "so associate themselves together that both are in direct control of the employee and he is made accountable to both, he will be considered an employee of both employers." GKN, 744 N.E.2d at 402 (quoting Jackson Trucking Co. v. Interstate Motor Freight Sys., 122 Ind. App. 546, 557, 104 N.E.2d 575, 580 (1952)). Even in such dual employer situations, the Act remains the employee's exclusive remedy for employment related injuries. Degussa Corp. v. Mullens, 744 N.E.2d 407, 412 (Ind. 2001).
Determining whether an employer-employee relationship exists is ultimately a question of fact. GKN, 744 N.E.2d at 402. In determining whether a dual employment relationship exists for purposes of the Act, we consider seven factors, none of which is dispositive:
(1) the right to discharge; (2) the mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and (7) establishment of work boundaries.
Hale v. Kemp, 579 N.E.2d 63, 67 (Ind. 1991). We weigh the factors as a balancing test rather than a mathematical formula where the majority wins. GKN, 744 N.E.2d at 402.

1. Right to Discharge
The terms of the Agreement grant Bon L the right to dismiss a GRUS worker at any time for unsatisfactory performance. Although there is no indication that a dismissal by Bon L would also result in a dismissal from GRUS, our supreme court has recognized that even this indirect right to discharge weighs in favor of finding dual employment. See Degussa, 744 N.E.2d at 413.

2. Mode of Payment
According to the Agreement, GRUS maintains all personnel and payroll records, computes and pays all wages, and withholds taxes. There is no indication in the record that Bon L had anything to do with payment of Cross other than forwarding his hours to GRUS based on Cross's sign in/out times. Therefore, this factor weighs against finding dual employment.[1]

3. Supplying Tools or Equipment
Cross provided at least some of his own tools for his work at Bon L. Although the agreement requires Bon L to provide safety equipment, Cross maintains that he provided his own safety equipment such as steel-toed boots, gloves and protective eyeglasses. The record is silent as to whether Bon L provided any materials or equipment for Cross's use. Therefore, based on the evidence presented in the record, this factor weighs against finding dual employment.

4. Belief of the Parties
"[T]he belief of the parties in the existence of an employer-employee relationship can often best be determined by the terms of the contract." Degussa, 744 N.E.2d at 413. The Agreement clearly contemplates that the workers GRUS provides to Bon L will remain GRUS employees. "GRUS shall maintain all necessary personnel and payroll records for its employees assigned to [Bon L]." Appellant's App., at 16 (emphasis added). Cross stated in his deposition that he worked for GRUS. There is also no direct evidence in the record to support a finding that Bon L regarded Cross as its employee. Therefore, this factor weighs against finding dual employment.

5. Control
"[A]lthough not dispositive, the right to control the manner and means by which the work is to be accomplished is the single most important factor in determining the existence of an employer-employee relationship." GKN, 744 N.E.2d at 403. Here, Bon L exercised extensive control over Cross in his daily work. Bon L conducted Cross's initial training at their Kentland plant. Cross, and the other GRUS employees working with him, answered solely to Bon L supervisors and had no GRUS supervisors at the jobsite. Bon L gave Cross detailed daily checklists of work to be accomplished and required him to complete daily work reports. Further, the Agreement explicitly grants Bon L the authority to "direct [GRUS's employees] in the performance of their daily duties and utilize their skills to the extent they are qualified as determined by [Bon L]," and states that "GRUS has no control over the specifications of the job to which the worker is assigned and GRUS offers no guarantee of performance." Appellant's App. at 16, 18 (emphasis added). Therefore, this factor weighs very heavily in favor of finding dual employment.

6. Length of Employment
The greater the length of employment, the more indicative it is of an employer-employee relationship. GKN, 744 N.E.2d at 406. Unfortunately, the record is completely silent on the issue of length of employment. The Agreement contemplates that GRUS may provide employees on either a temporary or permanent basis. No evidence exists to establish whether GRUS had provided Cross as a temporary or permanent employee. The analysis is further hindered by the fact that Cross sustained his injury on his eighth day on the job. Therefore, this factor neither weighs in favor of nor against finding dual employment.

7. Work Boundaries
This factor is primarily concerned with spatial boundaries where the work is to be performed. Wishard, 846 N.E.2d at 1093. Here, the evidence indicates that Bon L exercised considerable control over Cross's spatial boundaries. Although GRUS assigned Cross to work at the Kentland Plant, Bon L told Cross where to work within the plant on a daily basis through detailed daily instructions. Specifically, on the day that Cross was injured, a Bon L supervisor had instructed him to take measurements of a specific piece of machinery near where he fell. As a result, this factor weighs heavily in favor of finding dual employment.

8. Balancing of Factors
As discussed above, the first two factors, right to discharge and mode of payment, cancel each other out. See supra, note 1. In addition, the length of employment factor is neutral. This leaves two factors, supplying tools and belief of the parties, against finding dual employment and two factors, control and work boundaries, in favor of finding dual employment. The analysis of the factors is not a mathematical formula where the majority wins. GKN, 744 N.E.2d at 402. Rather, we must weigh and balance the factors. We find that both the control factor and the work boundaries factor weigh heavily in favor of finding dual employment. In addition, control of the means used in the results achieved is the most important factor in the analysis. See Id. As a result, we hold that GRUS and Bon L are dual employers of Cross for the purposes of the Act, and the exclusivity provision of the Act bars Cross's claims against Bon L.

Conclusion
The trial court did not err when it determined that Cross was a dual employee of GRUS and Bon L. Therefore, it properly granted Bon L's motion to dismiss for lack of subject matter jurisdiction.
Affirmed.
BAKER, C.J., and RILEY, J., concur.
NOTES
[1] As this court recently discussed, it is hard to imagine an employee leasing arrangement such as that at issue here that would not allow the lessee company to discharge the worker if it was unsatisfied with him or her. See Wishard Memorial Hosp. v. Kerr, 846 N.E.2d 1083, 1089 (Ind. Ct. App. 2006). Similarly, it is hard to imagine such a situation in which the lendor company would not be primarily responsible for payroll and tax withholdings. The Wishard court apportioned minimal weight to each factor. Id. at 1089. Without deciding the amount of weight properly due to each factor as a general rule, we recognize that in most employee lease situations, and in the situation presently before us, the two factors effectively cancel each other out.