**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Jun 19 2012, 9:08 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JAY L. LAVENDER**
Lavender & Bauer, P.C.
Warsaw, Indiana

ATTORNEYS FOR APPELLEES:

**WILLIAM N. HOWARD**
Freeborn & Peters LLP
Chicago, Illinois

**STEPHEN R. SNYDER**
Snyder Morgan LLP
Syracuse, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH WATSON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 43A04-1202-PL-55 |
| | ) | |
| P.C. OPERATING, LLC, d/b/a MENTONE MINI | ) | |
| MART, PALADIN GLOBAL DEVELOPMENT, | ) | |
| PALADIN COMMERCIAL, LLC, and | ) | |
| SCIENTIFIC GAMES INTERNATIONAL, INC., | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE KOSCIUSKO SUPERIOR COURT
The Honorable Duane G. Huffer, Judge
Cause No. 43D01-1106-PL-55

**June 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Kenneth Watson[1] appeals from the trial court's order dismissing his complaint against P.C. Operating, LLC d/b/a Mentone Mini Mart (Mini Mart), Paladin Global Development and Paladin Commercial, LLC (collectively, Paladin), and Scientific Games International, Inc. (SGI), for lack of subject matter jurisdiction. Watson presents several issues for our review the following of which is dispositive of this appeal: Did the trial court err by dismissing Watson's complaint for lack of subject matter jurisdiction based upon collateral estoppel?

We affirm.

Mini Mart owns and operates a gas station and convenience store in Mentone, Indiana. Watson claimed that on Tuesday, May 18, 2010, he went to Mini Mart at approximately 12:50 p.m. with completed play slips intending to play that day's Daily4 Midday lottery drawing. All sales of the Daily3 and Daily4 Midday lottery tickets are cut off at 1:10 p.m., and any sales occurring after that time are automatically allocated to the next day's lottery drawing.

On that day, Watson presented completed play slips for the Daily3, Daily4, Lucky Five, and Mega Million lottery games to the clerk at the Mini Mart. Watson claimed that the clerk had trouble processing the play slips, but did sell Watson the requested tickets. Watson claims that at the time, he believed the slips had been timely processed. The tickets themselves, however, show that they were processed for the next day. The numbers Watson had marked on the slips were the winning numbers for the May 18, 2010 Daily4 drawing.

---

[1] Ind. Appellate Rule 46(A)(6)(c) provides that the statement of facts "shall be in narrative form and shall not be a witness by witness summary of the testimony." We remind counsel that bullet point presentation of the facts is not the narrative form contemplated by the rule.

Watson submitted the claim forms to the Indiana Lottery Commission (Lottery Commission) contending that he presented the Daily4 play slips with sufficient time for the clerk at the Mini Mart to process them prior to the May 18, 2010 cutoff. He alleged that the Mini Mart clerk was negligent, or the lottery machine failed, either of which caused the tickets to bear the date of May 19, 2010 instead. The Lottery Commission denied Watson's claims.

Watson contested the Lottery Commission's determination and the matter was set for an evidentiary hearing before an administrative law judge (ALJ). Watson agreed in advance of the hearing date to submit the matter to the ALJ by way of stipulations and briefing. On March 1, 2011, the ALJ issued his written order affirming the Lottery Commission's decision not to award a prize to Watson for the May 18, 2010 Daily4 lottery game.

The ALJ made the following conclusions of law and findings of ultimate fact:

6.      [Watson's] claim that he was prevented from purchasing the Daily 4 Midday tickets before 1:10 p.m. because of problems with the terminal that printed the tickets has no merit. [Watson] acknowledges that his first ticket purchase of the day was of five Daily 3 Midday tickets and that the purchase was completed immediately after he presented his play slips. The transaction report supports that fact but also shows that he bought the Daily 3 tickets, and all the other tickets, *after* 1:10 p.m.

7.      Watson's allegation of negligence, which the *Koehlinger* case tells us is not a valid claim to begin with, is belied by the documentary evidence. The seller of the tickets acted as Watson's agent during the purchase and the transaction report shows there was no delay in the printing of the Daily 4 Midday tickets. The Daily 4 Midday tickets were printed within seconds of the Daily 3 Midday tickets being printed.

8.      The transaction report only reveals a brief delay in printing some of Watson's later purchases. The reason for the holdup is not clear and may have been the result of a paper jam, change in paper or operator error. The operator

3

did not call [SGI] and eventually printed all the tickets. Regardless, there was no interruption before the Daily 4 Midday tickets were printed.

9.      It was an unfortunate coincidence that Watson did not play his favorite numbers a few minutes earlier in the day. But at the time he made his purchase he got what he bargained for, a chance to win. Watson could have, and should have, cancelled his purchase if he thought there was a mistake with the transaction. In the final analysis, though, he had no more expectation of his favorite numbers being a winning combination on May 18th, than it would be on the 19th or any other day.

*Appellant's Appendix* at 138-39 (emphasis in original). On April 14, 2011, the Lottery Commission affirmed the order of the ALJ. Watson did not seek judicial review of the ALJ's order.

Watson filed a civil complaint, which was subsequently amended, against Mini Mart, Paladin, and SGI for damages incurred as a result of the allegedly improperly processed lottery tickets purchased from Mini Mart on May 18, 2010. That complaint was dismissed. Watson filed a second amended complaint on September 14, 2011. Mini Mart, Paladin, and SGI asserted collateral estoppel as a defense to the complaint. In particular, Mini Mart, Paladin, and SGI claimed that Watson was precluded from re-litigating his claims based upon claim or issue preclusion because the matter had been decided in the prior administrative proceedings. Mini Mart, Paladin, and SGI filed a motion to dismiss the complaint under Ind. Trial Rules 12(b)(1) and 12 (b)(6). After holding a hearing on the motion, the trial court entered an order dismissing Watson's complaint under T. R. 12(b)(1). The trial court denied Watson's motion to correct error and this appeal ensued.

Watson contends that the trial court erred by finding that his complaint was barred by collateral estoppel. In particular, Watson claims that he pursued administrative remedies to

determine if he could claim the prize winnings despite the error in processing his tickets. He

asserts that once the Lottery Commission denied his claim, his damages against Mini Mart,

Paladin, and SGI were certain, and that he could pursue his action against them. He claims

that the trial court erred by granting the motion to dismiss.

In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court

may consider the complaint, motion, and any affidavits or evidence submitted in support.

*GKN Co. v. Magness*, 744 N.E.2d 397 (Ind. 2001). The standard of review for Ind. Trial

Rule 12(B)(1) motions to dismiss is a function of what occurred in the trial court. *Id.* The

standard of review is dependent upon whether the trial court resolved disputed facts, and if

so, whether the trial court held an evidentiary hearing or ruled on a paper record. *Id*.

> If the facts before the trial court are not in dispute, then the question of subject
> matter jurisdiction is purely one of law. Under those circumstances no
> deference is afforded the trial court's conclusion because appellate courts
> independently, and without the slightest deference to trial court determinations,
> evaluate those issues they deem to be questions of law. Thus, we review *de
> novo* a trial court's ruling on a motion to dismiss under Trial Rule 12(B)(1)
> where the facts before the trial court are undisputed.

> If the facts before the trial court are in dispute, then our standard of review
> focuses on whether the trial court conducted an evidentiary hearing. Under
> those circumstances, the court typically engages in its classic fact-finding
> function, often evaluating the character and credibility of witnesses. Thus,
> where a trial court conducts an evidentiary hearing, we give its factual findings
> and judgment deference. And in reviewing the trial court's factual findings
> and judgment, we will reverse only if they are clearly erroneous. Factual
> findings are clearly erroneous if the evidence does not support them, and a
> judgment is clearly erroneous if it is unsupported by the factual findings or
> conclusions of law.

> However, where the facts are in dispute but the trial court rules on a paper
> record without conducting an evidentiary hearing, then no deference is
> afforded the trial court's factual findings or judgment because under those
> circumstances a court of review is "in as good a position as the trial court to

5

determine whether the court has subject matter jurisdiction. Thus, we review *de novo* a trial court's ruling on a motion to dismiss where the facts before the court are disputed and the trial court rules on a paper record.

*GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001) (internal quotations and citations omitted).

The trial judge held a hearing during which he heard the arguments of counsel, but no new evidence was admitted. Because the facts were in dispute and the trial court ruled on a paper record, we review the trial court's ruling on the motion to dismiss *de novo*.

We have said the following about collateral estoppel:

Collateral estoppel—also referred to as issue preclusion—bars the subsequent litigation of an issue necessarily adjudicated in a former suit. However, the former adjudication will only be conclusive to those issues which were actually litigated and determined therein.

Collateral estoppel does not extend to matters that were not expressly adjudicated or to matters that can be inferred from the prior adjudication only by argument. There is no estoppel where anything is left to conjecture as to what was necessarily involved and decided in the prior adjudication, as where the judgment, which might have been based upon one of several grounds, does not show which ground it was based upon.

Collateral estoppel can operate either defensively or offensively. Defensive collateral estoppel involves a situation where a defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff had previously litigated and lost. A prime consideration in the defensive use of collateral estoppel is whether the party against whom the prior judgment is asserted had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel.

Conversely, offensive collateral estoppel is where the plaintiff seeks to foreclose the defendant from litigating an issue that the defendant had previously litigated unsuccessfully in an action with another party. Determining the appropriateness of offensive collateral estoppel involves two considerations: (1) whether the party to the prior action had a full and fair

6

opportunity to litigate the issue, and (2) whether it is otherwise unfair to apply collateral estoppel given the facts of a particular case.

*In re Commitment of Heald*, 785 N.E.2d 605, 611-12 (Ind. Ct. App. 2003) (internal citations and quotations omitted). In this case we are reviewing the defensive use of collateral estoppels.

Watson pursued his claim of entitlement to the lottery winnings via administrative proceedings during which he presented his allegations against Mini Mart, Paladin, and SGI. The Lottery Commission affirmed the ALJ's order not to award a prize to Watson for the Daily4 Midday game on May 18, 2010, finding his claim to be without merit. Ind. Code Ann. §4-21.5-5-4 (West, Westlaw current through legislation effective May 31, 2012) provides that a person who fails to timely petition for review of an administrative order waives the person's right to judicial review. Watson waived his right to judicial review of the ALJ and Lottery Commission's determination by failing to petition for judicial review after receiving an adverse determination.

In the prior administrative proceeding, Watson presented the evidence relating to his purchase of the tickets and his claim that negligence on the part of the Mini Mart clerk, or a failure on the part of the lottery ticket machine, caused his ticket purchases to be untimely. Although Watson presented his prize claim to the Lottery Commission, which reached a determination adverse to Watson, in so doing he presented evidence of the actions of Mini Mart, Paladin, and SGI in relation to that claim. We conclude that Watson had a full and fair opportunity to litigate the issue in that proceeding. Watson could have pursued judicial review of the Lottery Commission's decision, but waived that review by failing to timely

7

petition for judicial review.  The trial court did not err by dismissing Watson's claim for lack of subject matter jurisdiction on the theory of collateral estoppel.

Because this issue is dispositive of the appeal, we do not address the other issues presented by Watson.

Judgment affirmed.

MAY, J., and BARNES, J., concur.