## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2016, 10:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Vassil M. Marinov
West Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Todd M. Nierman
Bonnie L. Martin
Ogletree, Deakins, Nash, Smoak &
Stewart
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Vassil M. Marinov,

*Appellant-Plaintiff,*

v.

Fiat Chrysler Automotive,

*Appellee-Defendant.*

December 29, 2016

Court of Appeals Case No.
79A04-1604-SC-881

Appeal from the Tippecanoe
Superior Court

The Honorable Laura Zeman,
Judge

The Honorable Jeffrey R. Smith,
Senior Judge

Trial Court Cause No.
79D04-1508-SC-2922

**Bailey, Judge.**

# Case Summary

Vassil Marinov ("Marinov") appeals the denial of his motion to correct error, which challenged the dismissal of his pro-se small claims complaint against his employer, Fiat Chrysler Automotive ("Fiat") whereby Marinov denied the validity of an assignment of wages for the payment of union dues. The small claims court, ruling upon a paper record, concluded that the claim was preempted by federal law and dismissed it on jurisdictional grounds. Marinov raises the sole issue of whether the dismissal was in error. We reverse and remand for a hearing for the development of jurisdictional facts.

# Facts and Procedural History

On August 4, 2015, Marinov filed a complaint against Fiat concerning an assignment of wages for the payment of union dues.[1] Fiat filed a motion to dismiss pursuant to Indiana Trial Rule 12(B)(6), for failure to state a claim upon which relief can be granted, and filed an accompanying brief and exhibits.

Marinov appeared at a non-evidentiary hearing conducted on February 25, 2016. Speaking through a Bulgarian-French translator, Marinov denied that he was a union member and indicated that his claim arose from employer wage assignment "without consent." (Tr. at 15.) Fiat referenced exhibits related to

---

[1] Indiana Code Section 22-2-6-2(b)(5) provides: "A wage assignment under this section may be made for the purpose of paying any of the following: Dues to become owing by the employee to a labor organization of which the employee is a member."

dealings between Marinov and Fiat and argued that Marinov's claim belonged before the National Labor Relations Board ("the NLRB").[2] At the conclusion of the hearing, the trial court entered an order of dismissal on grounds that it lacked subject matter jurisdiction.

On March 21, 2016, Marinov filed a motion to correct error. The trial court denied the motion to correct error that same day. This appeal ensued.

# Discussion and Decision

Generally, we review a trial court's ruling on a motion to correct error for an abuse of discretion. *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), *trans. denied*. However, to the extent the issues raised on appeal are purely questions of law, our review is de novo. *Id.*

Fiat described its motion as a Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted but instead presented jurisdictional argument. The lack of subject matter jurisdiction may be raised as an affirmative defense either in an answer to the complaint[3] or in a motion to dismiss. *GKN Co. v. Magness*, 744 N.E.2d 397, 403-04 (Ind. 2001). Generally,

---

[2] Fiat's counsel argued: "The problem is that the state wage deduction statute and federal labor law define consent differently." (Tr. at 21.)

[3] Here, in small claims proceedings, there was no answer to the complaint.

the party challenging subject matter jurisdiction carries the burden of establishing that jurisdiction does not exist. *Id.*

[7] Here, the small claims court treated Fiat's motion as one having been made pursuant to Trial Rule 12(B)(1). In ruling upon a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion, but may also consider affidavits or supporting evidence. *GKN*, 744 N.E.2d at 400. Additionally, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts. *Id.*

[8] The standard of appellate review is a function of what occurred in the trial court. *Id.* at 401. The standard of review is dependent upon whether the trial court resolved disputed facts and, if so, whether it conducted an evidentiary hearing or ruled on a paper record. *Id.* If the facts before the trial court are undisputed, the question of subject matter jurisdiction is purely one of law. *Id.* In such circumstances, we review de novo the trial court's ruling. *Id.*

[9] If the facts are in dispute, then our standard of review focuses on whether the trial court conducted an evidentiary hearing. *Id.* In those circumstances, the trial court typically engages in a classic fact-finding function, with evaluation of the character and credibility of witnesses. *Id.* Thus, where a trial court conducts an evidentiary hearing, we give its factual findings and judgment deference. *Id.* In that review, we will reverse only for clear error. *Id.*

[10] However, where the facts are disputed but the trial court rules on a paper record without conducting an evidentiary hearing, no deference is afforded the trial

court's factual findings or judgment. *Id.* In those circumstances, a court of review is in as good a position as the trial court to determine whether there is subject matter jurisdiction. *Id.* Thus, our review is de novo when the facts are disputed and the trial court has ruled upon a paper record. *Id.*

Here, the small claims court scheduled a hearing on Fiat's purported Trial Rule 12(B)(6) motion. A 12(B)(6) motion tests the legal sufficiency of a complaint and not the sufficiency of the facts alleged. *Trail v. Boys and Girls Clubs of Northwest Indiana*, 845 N.E.2d 130, 134 (Ind. 2006). Thus, a 12(B)(6) hearing is not for the purpose of admitting evidence.[4] Nonetheless, in advance of the hearing, Fiat filed a brief reciting a series of "relevant facts" for the small claims court's consideration. (Ex. Vol. pg. 3.) These included Fiat's contentions that Marinov had been hired pursuant to a particular collective bargaining agreement, he had signed a valid wage assignment, and he had not revoked the wage assignment.

---

[4] Trial Rule 12(B) provides in relevant part:

> If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. In such case, all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

[12] Fiat attached to the motion a number of "exhibits" including: a "Statement Concerning Union membership as a Condition of Continued Employment," correspondence from Marinov to Chrysler Group LLC, "Relevant Sections of Collective Bargaining Agreement [between Chrysler Group LLC and the UAW]," and an authorization for checkoff of dues and initiation fee (purportedly executed by Marinov). (Ex. Vol. pgs. 1-3, 14-39.) In sum, Fiat took the position that Marinov had voluntarily executed an assignment of his wages to pay union dues and any ensuing controversy involving reimbursement was preempted by federal labor law.

[13] Marinov claimed that his voluntary consent for a wage assignment was lacking. His unsworn statements included his representation that: "A form that which I has [sic] not being [sic] filled out does not give any right and if I promise and a declaration or that document was signed after previous document with Chrysler." (Tr. at 16.) Marinov also denied that he was employed by Chrysler on the date shown on the wage assignment. He also claimed that he had to fill out some documents and "the employer forced me to sign" but explained that, upon the employer's advice, he did not check a box mentioning union dues. (Tr. at 18.) He expressed his belief that his "recent declaration" to Chrysler "actually cancelled" any obligation. (Tr. at 18.)

[14] The trial court did not take sworn testimony to develop jurisdictional facts or assess credibility. Instead, the trial court ruled upon a paper record in the face of disputed facts. Accordingly, we owe no deference to the factual findings or judgment. *GKN*, 744 N.E.2d at 401.

Indiana is a so-called "right-to-work" state, meaning that employees cannot be required to join a union as a condition of employment. *See* Ind. Code § 22-6-6-8.[5] However, Indiana Code Section 22-2-6-2 permits an employee to authorize a wage assignment as one method of paying union dues. "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that the state jurisdiction must yield." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244 (1959).

Recently, the United States District Court for the Northern District of Indiana recognized that there is a conflict of law, to some extent, between Indiana Code Section 22-2-6-2 and federal law regarding dues checkoff authorizations:

> [T]o the extent that an Indiana law conflicts with federal law regarding dues checkoff authorizations, the State law is preempted, and General Cable has no obligation to comply with it. *See Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) ("State laws that have been preempted by federal laws are 'without effect.'"). Indiana's wage assignment statute requires that all assignments of wages be "revocable at any time." *See* Ind. Code § 22-2-6-2. The assignment of wages for union dues, however, is an area that has long been regulated by federal law. *See* 29 U.S.C. § 186(c)(4) (allowing written assignment of union dues, so

---

[5] Indiana Code Section 22-6-6-8 provides: "A person may not require an individual to: (1) become or remain a member of a labor organization; (2) pay dues, fees, assessments, or other charges of any kind or amount to a labor organization; or (3) pay to a charity or third party an amount that is equivalent to or a pro rata part of dues, fees, assessments, or other charges required of members of a labor organization; as a condition of employment or continuation of employment."

long as they are not irrevocable for more than a year or beyond the termination date of the [Collective Bargaining Agreement]). So regulated, in fact, that there is no room for regulation by the states, and laws like Indiana's wage assignment statute are preempted when it comes to dues checkoffs. *See Shen-Mar Food Prods., Inc.*, 221 N.L.R.B. 1329, 1330 (1976) ("[M]atters concerning dues-checkoff authorization and labor agreements implementing such authorizations are exclusively within the domain of Federal law."); *Int'l Bhd. Of Oper. Potters v. Tell City Chair Co.*, 295 F.Supp. 961, 965 (S.D. Ind. 1968) ("Congressional regulation of the area of check-offs is sufficiently pervasive and encompassing to pre-empt" Indiana's wage assignment statute.); *SeaPAK v. Indus. Tech & Prof. Empls.*, 300 F. Supp. 1197, 1200 (S.D. Ga 1969) ("The area of checkoff of union dues has been federally occupied to such an extent … that no room remains for state regulation in the same field."), *aff'd* 423 F.2d 1229 (5th Cir. 1970), *aff'd* 400 U.S. 985 (1971). As a result, Indiana's wage-assignment statute does not govern dues checkoff authorizations like Shephard's, and the arbitrator's award did not require the company to violate the Indiana statute.

*General Cable Indus. v. Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 135*, 2016 WL 3365133, slip op. at 3, (N.D. Ind. June 17, 2016).

[17] There, a union member had signed a dues checkoff when he began his employment. *See id.* at 1. After a few weeks, he resigned from the union and asked that his company stop deducting union dues from his pay. *Id.* Here, the nature of Marinov's claim is not entirely clear, due to the informality of small claims complaints and the lack of an evidentiary hearing. The trial court compared Marinov's claim to that in *Halsey v. Cessna Aircraft Co.*, 6 Kan. App.2d 37 (1981), which involved the interpretation or ambiguity of a union dues

checkoff authorization as it pertained to the time for revocation. Federal pre-emption was recognized and the matter was dismissed for lack of subject matter jurisdiction. *Id.* at 38.

[18] Here, however, it is not clear that Marinov asserts a right to revoke a wage assignment and obtain reimbursement for withholdings after that revocation. Rather, his position may be that there is nothing to revoke. The brief unsworn statements made by Marinov as to lack of consent assert that he did not execute a wage assignment, or he acted under coercion when signing, or he lacked knowledge of the contents. In his appellate brief, Marinov points to his earlier denial that he signed a checkoff document. In short, he denies the existence of a valid wage assignment provided for by state law. From the limited record, we are unable to determine whether Marinov's claim belongs before the NLRB as asserted by Fiat. Reviewing the paper record reviewed by the trial court, we cannot conclude that the trial court lacked jurisdiction over Marinov's claim.

# Conclusion

[19] The dismissal of Marinov's complaint was in error. As such, the trial court abused its discretion in denying Marinov's motion to correct error. We remand for a hearing for the development of jurisdictional facts.

[20] Reversed and remanded.

Najam, J., and May, J., concur.