**James TAYLOR and Nancy Taylor, Appellants–Plaintiffs,**

**v.**

**FORD MOTOR COMPANY, Arthur Adams, and Automotive Components Holdings, LLC, Appellees–Defendants.**

No. 49A02–1007–CT–823.

Court of Appeals of Indiana.

March 1, 2011.

Scott A. Benkie, Douglas A. Crawford, Benkie & Crawford, Indianapolis, IN, Attorneys for Appellant.

Kevin C. Schiferl, Maggie L. Smith, Carl W. Butler, Frost Brown Todd LLC, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

James and Nancy Taylor filed a negligence claim in Marion Superior Court against Arthur Adams ("Adams"), Automotive Components Holdings, LLC ("ACH"), and Ford Motor Company ("Ford") (collectively "the Defendants"). The trial court subsequently granted the Defendants' motion to dismiss for lack of subject matter jurisdiction. The Taylors appeal and argue that the trial court did have subject matter jurisdiction.

We affirm.

### Facts and Procedural History

James Taylor ("James") worked at the Ford factory on English Avenue in Indianapolis for approximately thirty years and retired in February 2007. Approximately two years prior to James's retirement, ACH, a subsidiary of Ford, had taken over the English Avenue factory, but James remained an employee of Ford until his retirement.

In August 2007, James returned to work at the English Avenue factory as an employee of Visteon Corporation ("Visteon"), but as a Visteon employee leased to ACH. Visteon and ACH entered into an Hourly Employee Lease Agreement, which provided in relevant part:

> Section 3.01. Employer Definition. *Visteon shall be the employer of the Leased Employees and ACH shall not be considered the employer.* Visteon will instruct Leased Employees to (i) conform to applicable law and ACH policies while at ACH facilities regarding safety and health, personal and professional conduct (including the wearing of an identification badge or personal protective equipment and adhering to plant regulations and general safety practices or procedures) generally applicable to such facilities, which policies, procedures, rules and regulations ACH will provide as soon as practicable after the date hereof, and as soon as practicable upon any modification, termination or adoption of any such policy, procedure, rule or regulation; and (ii) to otherwise

conduct themselves in a lawful and businesslike manner. Leased Employees also shall be subject at all times to ACH's and Visteon's policies and procedures. *During the Lease Period, Visteon shall retain responsibility for all payment and benefits due to the Leased Employees in connection with their work relating to the Business and prorated for part-time employment, including but not limited to:*

> (i) the payment of Leased Employees' base hourly wage or other components of pay as required under the applicable CBA [collective bargaining agreement] (less any applicable withholding or other taxes or any amounts deducted from such wages pursuant to normal payroll practices of Visteon);
> (ii) the provision of all other employee benefits under the applicable CBA;
> (iii) the payment of all federal, state, or local taxes withheld or otherwise required to be paid with respect thereto; and
> *(iv) the liability for statutory benefits, including workers' compensation, payable to employees.*

Section 3.02. Management of Employees. ACH and its management shall have the right to assign to, and to structure work for, the Leased Employees in accordance with the terms of the applicable CBA. *Visteon acknowledges that ACH will have no employees,* but ACH will carry out its management responsibilities hereunder by retaining appropriate personnel by assignment from Ford, leasing salaried employees from Visteon or retaining agency employees either by itself or through Visteon.

Appellant's App. pp. 192–93 (emphases added).

On July 30, 2008, James was seriously injured at the ACH plant when Adams, a Ford employee, struck him with a forklift.

As a result of these injuries, James received worker's compensation benefits.

On February 12, 2009, James and his wife Nancy ("the Taylors") filed suit against Adams, ACH, and Ford, alleging that the Defendants' negligence caused James's injuries which in turn caused James's wife to lose the services of her husband. The Defendants filed a motion to dismiss on March 26, 2010, claiming that the trial court lacked subject matter jurisdiction of the Taylors' claims because Indiana's worker's compensation laws provided the exclusive remedy. After the issue was briefed by the parties, the trial court held a hearing on the motion to dismiss on June 21, 2010. The trial court then granted the Defendants' motion to dismiss on July 2, 2010. The Taylors now appeal.

## Standard of Review

When an defendant responds to an employee's negligence claim on the basis that the employee's exclusive remedy is to pursue a claim for benefits under the Indiana Worker's Compensation Act, the defense is properly advanced through a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1). *GKN Co. v. Magness,* 744 N.E.2d 397, 400 (Ind.2001). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider the complaint and motion and also any affidavits or evidence submitted in support. *Id.* The trial court may also weigh the evidence to determine the existence of the requisite jurisdictional facts. *Id.*

The standard of appellate review for Trial Rule 12(B)(1) motions to dismiss is a function of what occurred in the trial court. *Id.* at 401. If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law. *Id.* In such cases, no deference is

afforded the trial court's conclusion because "appellate courts independently, and without the slightest deference to trial court determinations, evaluate those issues they deem to be questions of law." *Id.* (citation omitted). Thus, when the facts before the trial court are undisputed, we review the trial court's ruling on a motion to dismiss under Trial Rule 12(B)(1) *de novo. Id.*

If the facts before the trial court are in dispute, but the trial court rules on a paper record without conducting an evidentiary hearing, then our review is also *de novo,* because under such circumstances, we are in as good a position as the trial court to determine whether the court has subject matter jurisdiction. *Id.* If, however, the trial court holds an evidentiary hearing and acts as the trier of fact, we give its factual findings and judgment deference. *Id.* In reviewing the trial court's factual findings and judgment, we will reverse only if they are clearly erroneous. *Id.*

Here, although the trial court held a hearing on the motion to dismiss, the basic underlying facts appear to be undisputed, and the parties' arguments are ones regarding the law. We therefore apply a *de novo* standard of review.[1]

### Discussion and Decision

The parties' arguments all involve the operation of Indiana's Worker's Compensation Act ("the Act"). As explained in *Magness:*

> The Indiana Worker's Compensation Act (the "Act") provides the exclusive remedy for recovery of personal injuries arising out of and in the course of employment. Ind.Code § 22–3–2–6. Although the Act bars a court from hearing any common law claim brought against an employer for an on-the-job injury, it does permit an action for injury against a third-party tortfeasor provided the third-party is neither the plaintiff's employer nor a fellow employee. I.C. § 22–3–2–13.

744 N.E.2d at 401–02.

Here, the trial court accepted the Defendants' argument that James was, for purposes of the Act, an employee of Visteon, ACH, and Ford, and that the Act provides the Taylors' exclusive remedy for personal injuries arising out of and in the course of his employment for claims brought against his employers and his fellow employee. The Taylors argue to the contrary that James was an employee of Visteon only and that Adams was therefore not his fellow employee. The Taylors accordingly argue that their claims against Adams, ACH, and Ford are claims against third-parties that are not precluded by the Act and should be allowed to proceed.

The focus of the Taylors' argument is the Employee Lease Agreement entered into by ACH and Visteon. As set forth above, the Lease Agreement provides that "Visteon shall be the employer of the Leased Employees and ACH shall not be considered the employer," and further provides that "Visteon acknowledges that ACH will have no employees." Appellant's App. pp. 192–93. The Taylors argue that, pursuant to the Lease Agreement, Visteon, and Visteon alone, was James's employer and that Adams, ACH, and Ford are third parties against whom the Taylors may bring suit.

The Defendants rely on Indiana Code section 22–3–6–1(a) (2005) ("Subsection 1(a)"), which provides in relevant part:

---

1. Even if the facts were in dispute and we applied the clearly erroneous standard, we would still come to the same conclusion, i.e. that the trial court properly granted the Defendants' motion to dismiss for lack of subject matter jurisdiction.

"Employer" includes the state and any political subdivision, any municipal corporation within the state, any individual or the legal representative of a deceased individual, firm, association, limited liability company, or corporation or the receiver or trustee of the same, using the services of another for pay. A parent corporation and its subsidiaries shall each be considered joint employers of the corporation's, the parent's, or the subsidiaries' employees for purposes of IC 22–3–2–6 and IC 22–3–3–31. *Both a lessor and a lessee of employees shall each be considered joint employers of the employees provided by the lessor to the lessee for purposes of IC 22–3–2–6*[2] *and IC 22–3–3–31.*[3]

(emphasis added).

Because James was an employee leased by Visteon to ACH, the Defendants claim that Subsection 1(a) conclusively establishes that, for purposes of the Act, James was a joint employee of both Visteon and ACH, regardless of the language in the Employee Lease Agreement to the contrary. Therefore, the Defendants argue that the Taylors' exclusive remedy is provided by the Act and that the trial court did not have subject matter jurisdiction to hear his complaint.

Resolution of the issue before us requires us to construe Subsection 1(a). The first step in interpreting an Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question. *Kinslow v. GEICO Ins. Co.,* 858 N.E.2d 109, 114 (Ind.Ct.App. 2006). If the statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. *Id.*

Here, we can only conclude that the relevant portion of Subsection 1(a) is clear and unambiguous. It plainly provides that both the lessor and lessee of a leased employee "shall each be considered joint employers" of a leased employee. And when the word "shall" appears in a statute, we construe it as mandatory rather than discretionary unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning. *Romine v. Gagle,* 782 N.E.2d 369, 379 (Ind.Ct.App.2003), *trans. denied.* Here, the context and purpose of Subsection 1(a) indicate only that the word "shall" should be construed as mandatory.

Thus, even though James may have been considered an employee of Visteon only for purposes of the Employee Lease Agreement, by operation of the mandatory provision of Subsection 1(a), both Visteon and ACH are considered James's joint em-

---

**2.** This section is the "exclusivity provision" of the Act, providing:

> The rights and remedies granted to an employee subject to IC 22–3–2 through IC 22–3–6 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, the employee's personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 5–2–6.1 [concerning victims of violent crimes].

Ind.Code § 22–3–2–6 (2005).

**3.** This section provides:

> Whenever any employee for whose injury or death compensation is payable under [the Act] shall at the time of the injury be in the joint service of two (2) or more employers subject to [the Act], such employers shall contribute to the payment of such compensation in proportion to their wage liability to such employees; provided, however, that nothing in this section shall prevent any reasonable arrangements between such employers for a different distribution as between themselves of the ultimate burden of compensation.

Ind.Code § 22–3–3–31 (2005).

ployers for purposes of the exclusivity portion of the Act.

The Taylors argue that Subsection 1(a) applies only as a default provision when the lessor and lessee of the employees have not already come to a different agreement, but there is nothing in the language of the statute to support this reading. Subsection 1(a) does not say that both the lessor and lessee of leased employees shall each be considered joint employers unless otherwise specified by the parties. It says simply that both the lessor and lessee of leased employees *shall* each be considered joint employers, without further qualification.

In *Kenwal Steel Corp. v. Seyring*, 903 N.E.2d 510 (Ind.Ct.App.2009), we addressed the application of Subsection 1(a) to temporary employees. In *Seyring*, a temporary employee sought to bring suit against the company he had been assigned to work for by the temporary agency. The company, citing Subsection 1(a), claimed that the plaintiff was a leased employee and therefore, for purposes of the Act, was considered to be an employee of both the temporary agency and the company he was assigned to work for. The plaintiff claimed that he was only a temporary employee, not a leased employee. On appeal, we held that Subsection 1(a)'s reference to leased employees included temporary employees such as the plaintiff. *Id.* at 515. In so holding, we noted that our interpretation was consistent with the underlying policy and goals of the Act, which is designed for the benefit of employees:

> The underlying purposes of the Act include providing an expeditious and adequate remedy for workers injured in work-related accidents and ensuring a more certain remedy for the injured worker. *Treating the lessors and lessees of temporary employees as joint employers eliminates uncertainty re-garding whether an employee is covered under the Act and avoids potentially extensive litigation for employers and employees under the seven-factor test* [to determine whether a worker is an employee].

*Id.* We also recognized that "[a]lthough the Act should not be used to immunize third-party tortfeasors from liability for negligence that results in serious injuries to one who is not in their employ, it is the prerogative of the Legislature to definitively establish that the lessees of temporary employees are joint employers and not third-party tortfeasors." *Id.* (citing *Magness*, 744 N.E.2d at 404).

Here, we conclude that our General Assembly made the public policy decision to consider both lessors and lessees of leased employees as joint employers for purposes of the Act. As we noted in *Seyring*, this interpretation also eliminates the potential for disparate treatment between a permanent employee and a temporary or leased employee who do the same job and suffer the same injuries in an accident:

> If we were to hold otherwise, the permanent employee would recover only under the Act while the temporary employee could possibly recover under the Act (because of the employment relationship with the temporary agency) and still pursue a negligence action against the company hiring the temporary employee by alleging it was a third-party tortfeasor, not a joint employer.

903 N.E.2d at 516 n. 7.

The Taylors claim, however, that the *Seyring* court did not rely solely on Subsection 1(a), but also looked to the contract between the lessor and lessee of the temporary employee in determining who to consider as employers. The *Seyring* court did note that the lease agreement in that case explained the rate at which the lessor charged the lessee included worker's com-

pensation insurance. *Id.* at 512 n. 2. However, the court was simply acknowledging the statute that generally provides that joint employers are to contribute to the payment of workers compensation "in proportion to their wage liability." *Id.* (quoting Ind.Code § 22–3–3–31). The court also noted that this statute further provides that joint employers may make " 'reasonable arrangements between such employers for a different distribution as between themselves of the ultimate burden of compensation.' " *Id.*

The fact that joint employers may distribute the cost of the unemployment compensation by contract does not mean that they can contractually exclude themselves from the mandatory language of Subsection 1(a), which defines both lessors and lessees of leased employees as joint employers for purposes of the Act. The *Seyring* court did not hold otherwise. Instead, the court assumed *arguendo* that even if an employer could waive the exclusivity provisions of the Act, the lease agreement in that case did not contain such a waiver. The same is true here. Although the Employee Lease Agreement does provide that any leased employee such as James was to be considered an employee of Visteon only and not ACH, there is nothing the in the Agreement mentioning the exclusivity provision of the Act or indicating that ACH was intentionally waiving this provision. *See Int'l Health & Racquet Club, Inc. v. Scott,* 789 N.E.2d 62, 66 (Ind.Ct.App.2003) (noting that waiver is the "intentional relinquishment of a known right involving both knowledge of the existence of the right and the intention to relinquish it.").

We conclude that Subsection 1(a) is controlling and that ACH did not waive its status as James's joint employer for purposes of the Act. We therefore need not consider the traditional multi-factor test to determine whether James was an employ-

ee of Visteon or ACH and Ford. *See e.g., Magness,* 744 N.E.2d at 402 (citing seven factor test adopted in *Hale v. Kemp,* 579 N.E.2d 63, 67 (Ind.1991)). By operation of Subsection 1(a), both Visteon and ACH were James's joint employers. Because ACH is a subsidiary of Ford, Subsection 1(a) further provides that both ACH and Ford shall be considered as James's joint employers for purposes of the Act. *See* I.C. § 22–3–6–1(a) ("A parent corporation and its subsidiaries shall each be considered joint employers of the corporation's, the parent's, or the subsidiaries' employees for purposes of [the Act]."). James was therefore an employee of ACH and Ford, and the exclusivity provisions of the Act are applicable in the Taylors' claims against the Defendants. The trial court did not err in granting the Defendants' motion to dismiss for lack of subject matter jurisdiction.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.