

FILED

Dec 11 2018, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Robert J. Konopa
Eric W. von Deck
Elizabeth A. Klesmith
Tuesley Hall Konopa LLP
South Bend, Indiana

ATTORNEY FOR APPELLEE

Kevin W. Kearney
Hunt Suedhoff Kalamaros, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eshanya Walls,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Markley Enterprises, Inc.,<br>*Appellee-Defendant.* | December 11, 2018<br><br>Court of Appeals Case No.<br>18A-CT-266<br><br>Appeal from the Elkhart Superior<br>Court<br><br>The Honorable Stephen R.<br>Bowers, Judge<br><br>Trial Court Cause No.<br>20D02-1605-CT-105 |

**Pyle, Judge.**

## Statement of the Case

[1] Eshanya Walls ("Walls") filed a complaint against Markley Enterprises, Inc.

("Markley"), alleging that she was injured while working at Markley due to

Markley's negligence. Markley filed a motion to dismiss under Indiana Trial Rule 12(B)(1),[1] and the trial court dismissed Walls' complaint for lack of subject matter jurisdiction, finding that Walls' negligence claim was barred by the exclusive remedy provision of the Indiana Worker's Compensation Act ("the Act"). On appeal, Walls argues that the trial court erred in dismissing her complaint. Using the statutory definition of "employer" set forth in INDIANA CODE § 22-3-6-1(a), we conclude that Walls was an employee of both Markley and the temporary staffing agency that placed her with Markley, and that the trial court properly dismissed Walls' action under Trial Rule 12(B)(1) because her exclusive remedy rests with the Act.

We affirm.

## Issues

1. Whether the trial court erred in dismissing Walls' complaint for negligence against Markley for lack of subject matter jurisdiction.

2. Whether terms of the agreement between the temporary staffing agency and Markley amounted to Markley's waiver of the exclusive remedy provision of the Act.

---

[1] Markley initially filed a motion for summary judgment, which the trial court treated as a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1).

# Facts

Markley is a corporation which maintains an assembly plant in Elkhart County, Indiana. Bridge Staffing, Inc. ("Bridge") is a temporary staffing agency that "assign[s] employees to perform services for client companies, and provid[es] related management and human resource services." (App. Vol. 2 at 142). On August 20, 2004, Markley and Bridge entered into a Client Service Agreement ("Agreement"). Under the Agreement, Markley, as Bridge's client, indicated its desire that Bridge provide "services as may be necessary to meet [Markley's] staffing needs" (App. Vol. 2 at 142), and Bridge agreed to:

> 1. Provide [Markley] the employees and services as requested by [Markley] or [Markley's] assigned representatives.

> 2. Assume full responsibility for paying, withholding, and transmitting payroll taxes; making unemployment contributions; and handling unemployment and workers' compensation claims involving assigned employees with respect to compensation that [Bridge] has agreed to pay.

> 3. Recruit, interview, test, screen, and ensure compliance with legally required pre-employment obligations for all employees to be assigned to [Markley's] facilities.

> * * *

> 5. Provide all services which [Bridge] shall render under this Agreement to be as an independent contractor with respect to [Markley].

> 6. Provide workers' compensation insurance coverage for all employees assigned to [Markley's] facilities . . . .

(App. Vol. 2 at 142). The Agreement further provided as follows:

> 1. That [Bridge] will invoice [Markley] for services provided in accordance with this [A]greement on a weekly basis. . . .
>
> * * *
>
> 4. [Markley] agrees not to directly or indirectly hire an employee assigned through [Bridge] without written consent from [Bridge]. . . .

(App. Vol. 2 at 143).

[4] Walls began her employment with Bridge on June 23, 2014. Shortly thereafter, Bridge assigned her to work at Markley's Elkhart assembly plant. On October 2, 2014, while operating a punch press at Markley, Walls was pulled into the press, and a finger on her right hand was crushed and severed, resulting in permanent partial impairment. Walls filed a worker's compensation claim with Bridge and its worker's compensation insurer, and the insurer paid for all medical expenses and worker's compensation benefits related to the incident. Markley did not pay any worker's compensation benefits.

[5] On May 12, 2016, Walls filed a complaint against Markley, alleging that "[a]s a direct and proximate result of Markley's negligence," she sustained "personal injuries requiring surgeries and long-term medical care and mental distress and

emotional injuries." (App. Vol. 2 at 17). On July 5, 2016, Markley filed its answer to the complaint.

[6] On October 13, 2017, Markley filed a motion for summary judgment, maintaining that Walls was a joint employee of Bridge and Markley; that under the Act, Walls' exclusive remedy for personal injury was through worker's compensation; and that the trial court, therefore, lacked subject matter jurisdiction over the action. Walls filed a response to the summary judgment motion on November 10, 2017. On December 29, 2017, the trial court held oral argument on the motion.

[7] On January 18, 2018, the trial court issued its order, indicating that it treated Markley's motion for summary judgment as a motion to dismiss for lack of subject matter jurisdiction under Trial Rule 12(B)(1). The trial court granted Markley's motion and dismissed Walls' negligence action. Walls now appeals.[2]

## Discussion

[8] Walls argues that the trial court erred when it dismissed her complaint against Markley under Trial Rule 12(B)(1) for lack of subject matter jurisdiction, finding that the Act was her exclusive remedy for the personal injuries she sustained while working at Markley.

---

[2] Walls has filed a motion to strike Markley's appendix and any reference thereto in Markley's brief. Walls also has filed a motion for leave to cite to an unpublished case. Contemporaneously with this memorandum decision, we grant Walls' motion to strike Markley's appendix but decline to strike portions of Markley's brief. We hereby deny Walls' motion for leave to cite to an unpublished case.

It is well-settled that when an employer defends against an individual's negligence claim on the basis that the individual's exclusive remedy is to pursue a claim for benefits under the Act, the defense is properly advanced through a motion to dismiss for lack of subject matter jurisdiction under Trial Rule 12(B)(1). *GKN Co. v. Magness*, 744 N.E.2d 397, 400 (Ind. 2001) (citing *Foshee v. Shoney's Inc.*, 637 N.E.2d 1277, 1280 (Ind. 1994)). "When a trial court is confronted with a motion to dismiss based on Ind. Trial Rule 12(B)(1), the trial court is required to determine whether it has the power to adjudicate the action." *MHC Surgical Ctr. Assocs., Inc. v. State Office of Medicaid Policy and Planning*, 699 N.E.2d 306, 308 (Ind. Ct. App. 1998). "In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support." *GKN*, 744 N.E.2d at 400. "In addition, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts." *Id*.

The applicable standard of review for Trial Rule 12(B)(1) motions to dismiss for lack of subject matter jurisdiction is a function of what occurred in the trial court. *Id*. at 401. That is, the standard of review is dependent upon: (i) whether the trial court resolved disputed facts; and (ii) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a paper record. *Id*. If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law. *Id*. Under those circumstances no deference is afforded the trial court's conclusion because appellate courts independently, and without the slightest deference to the trial

court determinations, evaluate those issues they deem to be questions of law. *Id.*

[11] If, however, the parties dispute the facts presented to the trial court, then our standard of review focuses on whether the trial court conducted an evidentiary hearing. *Id.* Under those circumstances, the court engages in its fact-finding function, often evaluating the character and credibility of witnesses. *Id.* Accordingly, when a trial court conducts an evidentiary hearing, we give deference to its factual findings and judgment, and we will reverse only if the findings and judgment are clearly erroneous. *Id.*

[12] However, where, as here, the facts are in dispute but the trial court rules on a paper record without conducting an evidentiary hearing,[3] then no deference is afforded the trial court's factual findings or judgment. Under those circumstances, a court of review is "in as good a position as the trial court to determine whether the court has subject matter jurisdiction." *Id.* Thus, we review de novo a trial court's ruling on a motion to dismiss where the facts before the court are disputed and the trial court rules on a paper record. *Id.* In so doing, we will affirm the judgment of the trial court on any legal theory the evidence of record supports. *Id.* However, the ruling of the trial court is presumptively correct, and we will reverse on the basis of an incorrect factual

[3] Here, the trial court held oral argument on Markley's motion.

finding only if the appellant persuades us that the balance of the evidence is tipped against the trial court's findings. *Id*.

[13] Turning to the facts of this case, we note that the Act provides the exclusive remedy for recovery of personal injuries arising out of and in the course of employment. IND. CODE § 22-3-2-6 ("The rights and remedies granted to an employee [under the Act] on account of personal injury or death by accident shall exclude all other rights and remedies of such employee . . . on account of such injury or death, except for remedies available under IC 5-2-6.1."). Although the Act bars a court from hearing any common law claim brought against an employer for an on-the-job injury, it does permit an action for injury against a third-party tortfeasor provided the third-party is neither the plaintiff's employer nor a fellow employee. I.C. § 22-3-2-13.

[14] INDIANA CODE § 22-3-6-1(a) defines "employer" for purposes of the Act as follows, in relevant part: "'Employer' includes the state and any political subdivision, any municipal corporation within the state, any individual or the legal representative of a deceased individual, firm, association, limited liability company, or corporation or the receiver or trustee of the same, using the services of another for pay." The statute further provides, "*Both a lessor and a lessee of employees shall each be considered joint employers of the employees provided by*

*the lessor to the lessee for purposes of IC 22-3-2-6 and IC 22-3-3-31.*"[4] I.C. § 22-3-6-1(a) (emphasis added).

[15] According to Walls, the trial court erred in finding that she was a joint employee of both Bridge and Markley. Walls specifically contends that she is entitled to recover against Markley because at the time she was injured, she was not a leased employee of Markley but, instead, was "the employee of an independent contractor – Bridge – who *assigned* her not to Markley but to work at Markley's facility." (Walls' Br. 12) (emphasis added). The focus of Walls' argument is that "an assigned employee is not the same as a leased employee if those terms are strictly construed." (Walls' Br. 14). According to Walls, "[a]n assignment, contrary to a lease, does not necessarily involve a relinquishment of control of the property or person assigned." (Walls' Br. 14). Thus, according to Walls, because Walls was *assigned to work at Markley's assembly plant*, Walls was not a Markley employee. To resolve this matter, and because the Act does not define when an employee is considered "leased" under INDIANA CODE § 22-3-2-6(1)(a), Walls invites this Court to interpret the statute to "'determine and

---

[4] INDIANA CODE § 22-3-2-6 is the exclusive remedy provision of the Act. INDIANA CODE § 22-3-3-31 requires joint employers to contribute to the payment of compensation for injuries or death in proportion to their wage liability. This section also provides "that nothing in this section shall prevent any reasonable arrangements between such employers for a different distribution as between themselves of the ultimate burden of compensation." I.C. § 22-3-3-31. The Agreement between Markley and Bridge stated that Bridge assumed full responsibility for handling worker's compensation claims involving assigned employees and would provide worker's compensation insurance coverage for all employees assigned to Markley's facility.

give effect to the intent of the legislature'" regarding the term "leased." (Walls' Br. 13).

[16] It is well-settled that we cannot and do not engage in statutory interpretation unless the language of the statute is ambiguous. *Hinshaw v. Bd. of Comm'rs of Jay County,* 611 N.E.2d 637, 638 (Ind. 1993). An ambiguous statute is one which is susceptible to more than one interpretation. *Id.* When a statute is ambiguous, we will engage in construction to effect the intent of the legislature. *Id.* However, if the statute is not ambiguous, we must give effect to the plain, ordinary, and usual meaning of the words of the statute. *State Bd. of Tax Comm'rs v. Jewell Grain Co., Inc.,* 556 N.E.2d 920, 921 (Ind. 1990).

[17] Here, our review does not reveal any ambiguity regarding INDIANA CODE § 22-3-2-6(1)(a). Thus, we decline to engage in statutory interpretation of the statute. However, we do note that the term "leased" is not defined in the Act. Undefined words in a statute or ordinance are given their plain, ordinary, and usual meaning. *600 Land, Inc. v. Metro. Bd. of Zoning Appeals of Marion Cty.*, 889 N.E.2d 305, 309 (Ind. 2008); IND. CODE § 1-1-4-1(1). As a result, courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *State Bd. of Accounts v. Ind. Univ. Found.*, 647 N.E.2d 342, 347 (Ind. Ct. App. 1995), *trans. denied*.

[18] The term "leased" is defined as "1. To grant use or occupation of under the terms of a contract. 2. To get or hold by such a contract." American Heritage Dictionary of the English Language Online (5th ed. 2018)

https://www.ahdictionary.com/word/search.html?q=lease (last visited Nov. 19, 2018). Black's Law Dictionary defines the term "lease," as a verb, as follows: "[t]o grant the possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration." *Lease*, Black's Law Dictionary (8th ed. 2004).

[19] The term "assign" is defined as "6. *Law* To transfer (property, rights, or interests) from one to another." American Heritage Dictionary of the English Language Online https://www.ahdictionary.com/word/search.html?q=assign (last visited Nov. 19, 2018). Black's Law Dictionary defines the term "assign" as "[t]o convey; to transfer rights or property . . . ." *Assign*, Black's Law Dictionary (8th ed. 2004).

[20] In its order granting Markley's motion to dismiss, the trial court found as follows:

> Walls' differentiation between "leased" and "assigned" employees – the latter being a category she argues that she falls into and that rules out any finding of dual employment under § 22·3·6·l(a) – is a distinction that is illusory rather than real. . . . Walls makes much of the Bridge-Markley [A]greement's liberal use of the word "assign" and its derivatives, claiming that this aspect of the agreement weighs against a conclusion that she is a "leased" employee of Markley's under § 22·3·6·l(a). This contention attributes unwarranted significance to the use of "assign." Use of that word simply acknowledges what staffing agencies like Elwood and Bridge do: they "assign" workers to client companies seeking their assistance in obtaining an adequate workforce. *See*, *e.g.*, *Frontz v. Middletown Enter., Inc.*, 15 N.E.3d 666, 667 (Ind. Ct. App. 2014) (holding that plaintiff

Frontz was limited to remedies under Worker's Compensation Act against Middletown after he was injured; "Frontz was an employee of Wimmer Temporaries, Inc." and "Wimmer *assigned* Frontz to Middletown") (emphasis added); *Taylor v. Ford Motor Co.*, 944 N.E.2d 78, 83 (Ind. Ct. App. 2011) (describing plaintiff in [*Kenwal Steel Corp. v. Seyring*, 903 N.E.2d 510 (Ind. Ct. App. 2009),] as a "temporary employee [who] sought to bring suit against the company he had been *assigned* to work for") (emphasis added). It does not transform the arrangement between Bridge and Markley as to Walls into something other than what it was as a matter of law: an arrangement by one company (Markley) to lease an employee (Walls) from a temporary staffing agency (Bridge).

(App. Vol. 2 at 12-14). We agree. For purposes of the Act, Bridge was the lessor of Walls, Markley was the lessee of Walls, and Walls was a joint employee of the two. Accordingly, Walls is limited to the exclusive remedy provision of the Act. The trial court did not err in dismissing her action against Markley for lack of subject matter jurisdiction.[5]

[21] Walls also argues that, under the terms of the Agreement between Bridge and Markley, Markley "opted out" of the exclusive remedy provision of the Act. (Walls' Br. 18). In support of her argument, Walls points to the following terms of the Agreement: [Bridge] "agrees to . . . "[p]rovide workers' compensation insurance coverage for all employees assigned to [Markley's] facilities" and

---

[5] Because of this holding, we need not analyze the employment relationship between Markley and Walls under the seven-factor test set forth in *Hale v. Kemp*, 579 N.E.2d 63 (Ind. 1991). *See also GKN*, 744 N.E.2d at 399.

"[a]ssume full responsibility for . . . workers' compensation claims involving assigned employees." (App. Vol. 2 at 142). According to Walls, the "arrangement clearly intended that [Walls] would remain a Bridge employee – and *only* a Bridge employee – while rendering services at Markley's plant[, and that] Markley opted out of worker's compensation rights and responsibilities." (Walls' Br. 22).

[22] Even assuming that an employer can waive the exclusive remedy provision of the Act, Walls has not established that Markley waived its rights or "opted out of worker's compensation rights and responsibilities." (Walls' Br. 22). "Waiver is the intentional relinquishment of a known right; an election by one to forego some advantage he might have insisted upon." *Lafayette Car Wash, Inc. v. Boes*, 258 Ind. 498, 501, 282 N.E.2d 837, 839 (1972). Nothing in the terms of the Agreement suggests that Markley intentionally relinquished its right. We, therefore, conclude that Markley did not waive its right to enforce the exclusive remedy provision of the Act, and that the trial court did not err in finding the same.

[23] Affirmed.

Vaidik, C.J., and Barnes, Sr.J., concur.